517 A.2d 523

**ESTATE OF Francis J. McGOVERN, Appellee,**

v.

**COMMONWEALTH of Pennsylvania, STATE EMPLOYEES' RETIREMENT BOARD, Appellant.**

Supreme Court of Pennsylvania.

Argued May 14, 1986.

Decided Nov. 5, 1986.

378

Nicholas J. Marcucci, Herbert C. Goldstein, State Employees' Retirement Bd., John P. Krill, Office of Gen. Counsel, Harrisburg, for appellant.

Richard P. Hunter, Jr., Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

OPINION OF THE COURT

FLAHERTY, Justice.

On January 9, 1981, Francis J. McGovern retired after thirty years of service with the Delaware Joint Toll Bridge Commission. In December of 1980, just prior to his retirement, Mr. McGovern executed and filed a retirement application in which he selected two of several options for payout under the retirement plan offered by his employer. Under the options selected by Mr. McGovern, he would receive a lump sum payment of $27,105, a joint survivor annuity paying him $750 monthly for life, and if he predeceased his wife, she would receive a survivor's annuity of $375 monthly for life.

Mrs. McGovern, who had been ill with Hodgkins disease since 1979, died of cancer on January 23, 1981. Five days later, on January 28, 1981, Mr. McGovern died. The Board determined that Mr. McGovern's estate was due the lump sum of $27,105.00 plus $499.92, a portion of the first month's annuity payment. Had Mr. McGovern chosen a living survivor annuitant, or no beneficiary at all, the sum of $151,311.45 would have been available to the living beneficiary or his estate.

Michael J. McGovern, Mr. McGovern's son, requested that the Board review the amount payable to the estate, on the grounds that his father was not mentally competent when he executed the retirement papers. According to testimony of Michael McGovern, his sister, and friends of the elder Mr. McGovern, Mr. McGovern suffered during the last year of his life from alcoholism and apparent distress at the state of his wife's health. Although Mrs. McGovern was told in March of 1980 that she was terminally ill, Mr. McGovern, refused to acknowledge that his wife was going to die. Occasionally, Mr. McGovern would admit that his wife was seriously ill, but Mr. McGovern's friends testified that he was so sensitive to any conversation concerning his wife's health that they would never mention it unless he introduced the subject. When Mrs. McGovern was hospitalized

for almost two months during the last year of her life, Mr. McGovern visited her only once, for five minutes, and would sometimes insist that his wife was malingering, or that she had a bleeding ulcer. Additionally, although Mr. McGovern had an alcohol problem for many years, when his wife's illness became apparent, he drank more heavily, even to the point of missing work and being too drunk to keep appointments. Finally, there was some evidence that Mr. McGovern was not always attuned to reality in other ways: after he retired, he would, on occasion, dress in his uniform and demand to be taken to work, and after his wife died, Mr. McGovern refused to eat and was heard having conversations with his dead father.

The Board advised the junior Mr. McGovern that his father's retirement documents were binding and could not be changed. On November 25, 1981, an administrative hearing was conducted at which Mr. McGovern contended that on December 17, 1980, the day his father completed his retirement application forms, his father did not have the requisite mental capacity to execute a retirement application. After hearing testimony from Mr. McGovern's friends and family, including a letter from the family doctor, and evidence from the retirement official who dealt with Mr. McGovern, a hearing examiner rejected this claim. The Board affirmed the hearing officer, based on its conclusion that Mr. McGovern did, in fact, possess the requisite mental capacity on the day in question and that he understood the nature of the transaction. Commonwealth Court reversed the Board, holding that it capriciously disregarded the evidence of Mr. McGovern's incapacity, 85 Pa.Cmwlth. 50, 481 A.2d 981. We granted allocatur to examine whether Commonwealth Court applied the appropriate standard of review of the Board's findings of fact and whether that court's statement of the law of capacity to enter into a legally binding contract was correct.

Commonwealth Court stated its standard of review as follows:

Our scope of review where the decision of the Board is against the appellant-claimant is to determine whether the board's findings of fact are consistent with each other and with its conclusions of law, and can be sustained without a capricious disregard of the evidence. *Brayo v. Workmen's Compensation Appeal Board,* 62 Pa.Commonwealth Ct. 234, 435 A.2d 1346 (1981).

The *Brayo* case, cited as authority for this standard of review, states:

Where, as here, the Claimant is the party with the burden of proof and fails to carry that burden, our Court has held that our scope of review is to determine whether the findings of fact are consistent with each other and with the conclusions of law and can be sustained without a capricious disregard of competent evidence which is the willful, deliberate disbelief of an apparently trustworthy witness, whose testimony one could not possibly challenge. *Jones and Laughlin Steel Corp. v. Workmen's Compensation Appeal Board,* 52 Pa. Commonwealth Ct. 436, 415 A.2d 1275 (1980).

*Brayo v. W.C.A.B. et. al.,* 62 Pa. Commonwealth Ct. 234, 236–37, 435 A.2d 1346, 1347 (1981).

The Administrative Agency Law, on the other hand, which concerns appeals taken by persons aggrieved by an adjudication of a Commonwealth Agency, 2 Pa.C.S.A. § 702, provides a different scope of review of agency decisions:

After hearing, the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter A of Chapter 5 (relating to practice and procedure of Commonwealth agencies) have been violated in the proceedings before the agency, *or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence.*

2 Pa.C.S.A. § 704. (Emphasis added.) Because the standard of review articulated by Commonwealth Court in this case finds no support in the Commonwealth Agency Act, we

hold that Commonwealth Court's review of the present case was conducted pursuant to an improper and illegal standard. The proper standard is that articulated in Section 704 of the Administrative Agency Act, supra.

[1] Since there is no allegation in this case that any party's constitutional rights have been violated or that the proceedings were irregular, the question on review is whether the agency's adjudication is supported by findings of fact which are, in turn, supported by substantial evidence.

The Board determined, in essence, that Mr. McGovern was mentally competent to execute his retirement papers and that he understood the nature of the transaction. In support of this adjudication, the Board found that although Mr. McGovern had an alcohol problem and was distressed about his wife's illness with cancer, Mr. McGovern, some two months before his retirement, executed a will which even his son believed to be competently executed; he conducted his job over the years in a controlled and responsible fashion; he sometimes admitted and sometimes denied the seriousness of his wife's illness; he appeared coherent and responsive to the retirement official on December 17, 1980 during the meeting at which he selected his retirement options; and after the meeting of December 17, he sent a check to the retirement fund, as discussed at that meeting, to purchase his military buy-back retirement time.

Whether these facts support a conclusion that Mr. McGovern was legally competent to execute his retirement papers on the day in question will depend on the legal definition of competence.

It is well established that the State Employee's Retirement System creates a contract between the Commonwealth and its employees. *Kline v. Morrison,* 353 Pa. 79, 44 A.2d 267 (1945). When a member retires and elects a retirement option, he enters into a contract with the Board. *Bowers v. State Employe's Retirement System,* 29 Pa. Comwlth.Ct. 561, 371 A.2d 1040 (1977). If the benefit

contract is freely entered into with an understanding of its terms, the contract cannot be set aside. *Buchan v. State Employee's Retirement Board,* 79 Pa.Comwlth.Ct. 635, 470 A.2d 208 (1984).

Here the contract is challenged on the grounds that Mr. McGovern lacked the mental capacity to enter into an agreement. Under Pennsylvania law, it is presumed that an adult is competent to enter into an agreement, and a signed document gives rise to "the presumption that it accurately expresses the state of mind of the signing party." *Taylor v. Avi,* 272 Pa.Super. 291, 296, 415 A.2d 894 (1979). To rebut this presumption, the challenger must present evidence of mental incompetency which is " 'clear, precise and convincing'." *Elliott v. Clawson,* 416 Pa. 34, 204 A.2d 272 (1964).

This Court has held that where mental capacity to execute an instrument is at issue, "the real question is the condition of the person at the very time he executed the instrument or made the gift in question.... We further held that a person's mental capacity is best determined by his spoken words and his conduct, and that the testimony of persons who *observed such conduct on the date in question outranks testimony as to observations made prior to and subsequent to that date. Sobel v. Sobel,* 435 Pa. 80, 83, 254 A.2d 649 (1969). (Emphasis added). "Mere mental weakness, if it does not amount to inability to comprehend the contract, and is unaccompanied by evidence of imposition or undue influence," is insufficient to set aside a contract. *Law v. Mackie,* 373 Pa. 212, 95 A.2d 656 (1953). Finally, a presumption of mental incapacity does not arise merely because of an unreasonable or unnatural disposition of property. *Lawrence's Estate,* 286 Pa. 58, 65, 132 A. 786 (1926).

Contrary to these principles concerning the Pennsylvania law of competence, Commonwealth Court in this case adopted a new standard of competence based on the Re-

statement of Contracts, 2d. Section 15 of the Restatement, relied on by the court below, states:

§ 15. Mental Illness or Defect

(1) A person incurs only voidable contractual duties by entering into a transaction if by reason of mental illness or defect

    (a) he is unable to understand in a reasonable manner the nature and consequences of the transaction, or

    (b) he is unable to act in a reasonable manner in relation to the transaction and the other party has reason to know of his condition.

(2) Where the contract is made on fair terms and the other party is without knowledge of the mental illness or defect, the power of avoidance under Subsection (1) terminates to the extent that the contract has been so performed in whole or in part or the circumstances have so changed that avoidance would be unjust. In such a case a court may grant relief as justice requires.

This Court has never adopted Section 15 of the Restatement, which requires a post-hoc determination of reasonableness, and we decline to do so now. In fact, because the provisions of Section 15 establish new tests for incompetence which conflict with those previously established by this Court, Commonwealth Court exceeded its authority in purporting to adopt Section 15 of the Restatement.

Accepting, as we do, that the common law of incompetence as it has been articulated in our prior cases is the law that controls this case, even if it were conceded that Mr. McGovern may have been incompetent to execute any legal document at certain intervals of time within months of his wife's death, substantial evidence also supports the conclusion that on December 17, 1980, he was lucid and understood the terms of the retirement contract. This evidence, which consists of testimony of the retirement official who met with Mr. McGovern on December 17, is significant because it concerns Mr. McGovern's state of mind on the date in question. *Sobel v. Sobel,* supra. Moreover, in support of the official's observations, immediately after the

December 17th meeting, Mr. McGovern mailed a check to the retirement fund to purchase his military buy-back time, which was discussed at that meeting. Such an act is consistent with the Board's determination that Mr. McGovern acted with deliberation and understanding on December 17, 1980.

It is our conclusion, therefore, that Commonwealth Court was in error in reversing the Board's determination, which properly applied the law of incompetency and which was supported by substantial evidence.

Ironically, the junior Mr. McGovern's explanation of what his father did in this case may be very close to the truth:

Q. Let me ask you the critical question. Why did he [the elder Mr. McGovern] designate a joint survivor of benefits on that application after all the counseling and the dialogue that you had with him regarding the pension? Can you attribute anything for that choice?

A. [The junior Mr. McGovern]. I think my father had ... arrived at a frame of reference in his mind that was—permitted him to function, and I think that this frame of reference was totally out of touch with the reality of his real life situation. I think he had convinced himself that my mother was going to outlive all of us and that he was just—he just refused to accept, I think he just refused to accept the truth that my mother was dying and that he decided that this illusion that he created for himself that he was going to live and that my mother was going to live and was not sick at all was the truth and that she was going to live for twenty years or whatever.

They were going to have a golden retirement together and that he decided to name her at the last minute to ensure that he was right; that we were all wrong and that he was right, that she was going to live forever....

The real thrust of Mr. McGovern's claim in this case is that his father's designation of his mother as a secondary beneficiary was unreasonable and unwise. From some points of view, that may be true, but no one can say that belief that

another will overcome a terrible disease and live is lunatic; no one can successfully assert that such a belief, even against the medical evidence, renders one incompetent. Such a belief may be, from some points of view, thoughtless, against scientific probabilities, irrational, and when combined with what amounts to a testamentary disposition of property in favor of the ill person as opposed to another who seems to be healthy, it may even be said to be selfish and heedless of the needs of others. But whatever may be said about it, it cannot, without more, be said to prove incompetence. Thus, the claim that is made here in the name of incompetence is in reality a challenge to the wisdom, the desirability, the thoughtfulness and the rationality of the disposition. But such a challenge may not succeed, for neither courts nor disappointed heirs may alter the disposition of the property of a deceased person merely on the grounds that that person acted in a way that the challenger believes to be irrational.

Order of Commonwealth Court is reversed and the determination of the Pennsylvania State Employee's Retirement Board is reinstated.

NIX, C.J., did not participate in the consideration or decision of this case.

LARSEN, J., files a dissenting opinion which McDERMOTT, J., joins.

LARSEN, Justice, dissenting.

I dissent. In view of the obvious diminished mental capacity of the decedent Francis J. McGovern, I would hold that the contract created by decedent's election of option 3 and the designation of his then terminally ill wife as his sole beneficiary is voidable. The evidence introduced at the hearing before the State Employes' Retirement Board (Board) is clear and persuasive. It shows that the decedent was laboring in a defective mental state when he signed his job termination and retirement papers on December 17, 1980. The decedent's flawed mental condition rendered him

unable to act reasonably and deal with his retirement options in a reasonable fashion.

Contrary to the evidence, the Board found that the decedent "did not lack the requisites or mental capacity to execute his retirement application on December 17, 1980 and did understand the nature of the transaction." (Board, Conclusion of Law No. 1) The Commonwealth Court reversed the Board, relying upon Section 15 of the Restatement of Contracts Second which provides as follows:

### § 15. Mental Illness or Defect

(1) A person incurs only voidable contractual duties by entering into a transaction if by reason of mental illness or defect

(a) he is unable to understand in a reasonable manner the nature and consequences of the transaction, or

(b) he is unable to act in a reasonable manner in relation to the transaction and the other party has reason to know of his condition.

(2) Where the contract is made on fair terms and the other party is without knowledge of the mental illness or defect, the power of avoidance under Subsection (1) terminates to the extent that the contract has been so performed in whole or in part or the circumstances have so changed that avoidance would be unjust. In such a case a court may grant relief as justice requires.

The comment to Section 15 of the Restatement is particularly apropos.

### Comment:

a. *Rationale.* A contract made by a person who is mentally incompetent requires the reconciliation of two conflicting policies: the protection of justifiable expectations and of the security of transactions, and the protection of persons unable to protect themselves against imposition. Each policy has sometimes prevailed to a greater extent than is stated in this Section. At one extreme, it has been said that a lunatic has no capacity to contract because he has no mind; this view has given way to a better understanding of mental phenomena and to

the doctrine that contractual obligation depends on manifestation of assent rather than on mental assent. See §§ 2, 19. At the other extreme, it has been asserted that mental incompetency has no effect on a contract unless other grounds of avoidance are present, such as fraud, undue influence, or gross inadequacy of consideration; it is now widely believed that such a rule gives inadequate protection to the incompetent and his family, particularly where the contract is entirely executory.

b. *The standard of competency.* It is now recognized that there is a wide variety of types and degrees of mental incompetency. Among them are congenital deficiencies in intelligence, the mental deterioration of old age, the effects of brain damage caused by accident or organic disease, and mental illnesses evidenced by such symptoms as delusions, hallucinations, delirium, confusion and depression. Where no guardian has been appointed, there is full contractual capacity in any case unless the mental illness or defect has affected the particular transaction: a person may be able to understand almost nothing, or only simple or routine transactions, or he may be incompetent only with respect to a particular type of transaction. Even though understanding is complete, he may lack the ability to control his acts in the way that the normal individual can and does control them; in such cases the inability makes the contract voidable only if the other party has reason to know of his condition. Where a person has some understanding of a particular transaction which is affected by mental illness or defect, the controlling consideration is whether the transaction in its result is one which a reasonably competent person might have made.

**Illustration:**

1. A school teacher, is a member of a retirement plan and has elected a lower monthly benefit in order to provide a benefit to her husband if she dies first. At age 60 she suffers a "nervous breakdown," takes a leave of absence, and is treated for cerebral arterioscle-

rosis. When the leave expires she applies for retirement, revokes her previous election, and elects a larger annuity with no death benefit. In view of her reduced life expectancy, the change is foolhardy, and there are no other circumstances to explain the change. She fully understands the plan, but by reason of mental illness is unable to make a decision based on the prospect of her dying before her husband. The officers of the plan have reason to know of her condition. Two months after the changed election she dies. The change of election is voidable.

c. *Proof of incompetency.* Where there has been no previous adjudication of incompetency, the burden of proof is on the party asserting incompetency. Proof of irrational or unintelligent behavior is essential; almost any conduct of the person may be relevant, as may lay and expert opinions and prior and subsequent adjudications of incompetency. Age, bodily infirmity or disease, use of alcohol or drugs, and illiteracy may bolster other evidence of incompetency. Other facts have significance when there is mental illness or defect but some understanding: absence of independent advice, confidential or fiduciary relationship, undue influence, fraud, or secrecy; in such cases the critical fact often is departure from the normal pattern of similar transactions, and particularly inadequacy of consideration.

The above comment and illustration are specifically germane to the instant case. The final months of the decedent's life were pathetic. They depict an existence dominated by "delusion, hallucination, delirium, confusion and depression." *McGovern v. State Employes' Retirement Board,* 85 Pa.Cmwlth.Ct. 50, 481 A.2d 981 (1984). During that time of progressive deterioration the decedent's acts and decisions were influenced by his corrupted view of reality. His conduct often was based upon false percep-

tions. Such perceptions apparently prompted his selection of pension option 3.[1]

The decedent may have understood the pension plan as presented to him by the pension officer but, the evidence establishes that he was unable to make a rational decision based upon the very real prospect of his wife dying before him. The decedent's wife and sole beneficiary, Loretta M. McGovern, was first diagnosed in October of 1979 as suffering from Hodgkin's disease. In March of 1980 she was informed that the disease was in its late stages. (Board, Finding of Fact No. 2.) Upon being apprised of these medical findings, the decedent became despondent, his "drinking" habits worsened and he, at times, refused to accept the fact that his wife was terminally ill with cancer. (Board, Finding of Fact No. 4.) The majority expresses the view that a person who believes, contrary to scientific probability, that another will overcome a usually terminal disease and live is not rendered incompetent by holding such a belief. The majority goes on to say that this is true even if we consider that such a belief is irrational. These, however, are not the circumstances presented in the instant case. Here the decedent did not express a belief that his wife would overcome a terrible disease. Rather, the decedent, at times, flatly denied that Mrs. McGovern was ill, accusing her of malingering. At other times he seemed to acknowledge her illness. This kind of irrational conduct when considered in conjunction with the decedent's other aberrant behavior demonstrates a lack of mental capacity sufficient to render the decedent's pension option election voidable.

Additionally, the pension officer, James Kendig, who accepted decedent's application had reason to know of dece-

---

**1.** Prior to his retirement and the signing of retirement papers, the decedent indicated that, when he did retire, he would name his daughter as sole beneficiary under pension option 1. (Rep.Rec. pps. 33a, 34a). The decedent frequently told his friend and fellow-worker, James Moore, that he wanted everything to go to his daughter. (Rep.Rec. pps. 77a, 78a). After he retired, the decedent informed his friend, James Moore, that he had selected pension options 1 and 4 and everything was going to his daughter. (Rep.Rec. pps. 83a, 88a, 90a, 92a).

dent's condition. Starting in early 1978, pension officer Kendig had many discussions with the decedent. Those discussions included face to face meetings and numerous telephone conversations. It was established that Mr. Kendig had reason to know of decedent's alcohol problem. Further, at the time of his application, the decedent failed to give Mr. Kendig comprehensible answers to questions concerning the health of Mrs. McGovern. Considering all of the evidence there was sufficient and clear proof of irrational behavior and debilitating alcohol abuse on the part of the decedent to render voidable his choice of pension option 3.

I would adopt the principles set forth in the Restatement of the Law of Contract Second, § 15, apply those principles to this case, and affirm the Commonwealth Court.

I dissent.

McDERMOTT, J., joins in this dissenting opinion.