547 A.2d 865

Margaret LaSota et al., Petitioners *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs July 18, 1988, to President Judge CRUMLISH, JR., Judge COLINS, and Senior Judge BLATT, sitting as a panel of three.

*James A. Diamond, Handler, Gerber, Johnston & Aronson,* for petitioners.

*James K. Bradley,* Assistant Counsel, with him, *Clifford F. Blaze,* Deputy Chief Counsel, for respondent.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., September 22, 1988:

Margaret LaSota and twenty-nine other claimants (claimants) appeal Unemployment Compensation Board

of Review orders affirming referee decisions denying claimants benefits because their earnings during an otherwise compensable vacation shutdown exceeded the maximum amount permitted for eligibility. Section 404(d) of the Unemployment Compensation Law.[1] We reverse and remand.

The claimants, garment manufacturer employees, received "vacation pay" and holiday bonuses prior to their employer's scheduled two-week December shutdown. The Board determined that each employee's payment should be allocated as earnings to individual shutdown days, in an amount equal to the employee's regular daily wage rate, until the total payment was exhausted.[2] The claimants concede that this allocation process resulted in excess earnings, and thus ineligibility, with respect to the *first week* of the shutdown. However, they contend that the Board miscalculated in finding[3] that they also had excess earnings during the *second week*.

Based on our review of the Board's findings, we agree with the claimants. The Board expressly found that the vacation pay received in December was allo-

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §804(d).

[2] For example, claimant LaSota received a total payment of $174.35. Her regular daily wage is $35.35. She is deemed to have received $35.35 for each day she did not work, for as many days as the $174.35 will cover. At this rate, the $174.35 will cover 4.93 shutdown days. LaSota did not work three days during the first shutdown week but is deemed to have received her regular wage for each day. This leaves only 1.93 days of pay which can be allocated in the second week.

[3] Our scope of review is limited to a determination of whether there was an error of law or whether a finding of fact was unsupported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704; *Estate of McGovern v. State Employees' Retirement Board,* 512 Pa. 377, 517 A.2d 523 (1986).

cable to that period. Finding of Fact No. 5, Board's Decision No. B-260896. A *pro tanto* allocation to each shutdown day gradually depletes the total sum paid so that the amount to be allocated in the second week would not exceed the maximum earnings permitted for eligibility for that week.[4]

The Board alternatively contends that its conclusion is supportable for reasons not relied on in its decision, and therefore this Court can sustain the result. Of course, where the Board assigns an erroneous legal reason to a correct decision, this Court can sustain the result where the record clearly reflects the correct basis for the decision. *Waltz v. Unemployment Compensation Board of Review,* 111 Pa. Commonwealth Ct. 54, 533 A.2d 199 (1987).

The Board points to evidence showing that the claimants received a total of six percent of their annual salary as vacation pay for the calendar year. They received four percent during an earlier July shutdown and two percent during the December shutdown. The Board argues that one percent received in July should be treated as though it were received in the December shutdown so as to equally apportion the yearly vacation pay between the two periods. This additional one percent allocated to December would result in claimants having received excess earnings during the second week.

Section 404(d) of the Law provides that vacation pay "shall be allocated to such period or periods of unemployment as shall be determined by rules and regulations of the department." The applicable regulation provides, in pertinent part:

---

[4] We will not, in this Opinion, perform the mathematical computations for each claimant. However, such computations should be made on remand.

The Department shall determine the number of days or weeks of *the vacation period to which the vacation pay shall be applied* by dividing the total amount of vacation pay by the regular full-time daily or weekly wage of the claimant.

34 Pa. Code §65.96 (emphasis added).

The Board maintains that the phrase "vacation period" means a single period consisting of all separate shutdowns in a year. However, such an interpretation would require us to disregard the Board's Finding of Fact No. 5, cited above, which indicates that the vacation pay *received in December* was allocable to the December shutdown. Thus, the Board proposes alternative *factual* findings. We may not reverse factual findings where they are supported by substantial evidence. *Glenn v. Unemployment Compensation Board of Review*, 71 Pa. Commonwealth Ct. 550, 455 A.2d 293 (1983). Here, the evidence showing that the payment was received at the December shutdown supports the finding.

Accordingly, we reverse the Board and remand for a recomputation of claimants' earnings consistent with this Opinion.

### ORDER

The orders of the Unemployment Compensation Board of Review, Nos. B-260896, B-260897, B-260898, B-260899, B-260900, B-260901, B-260902, B-260903, B-260904, B-260905, B-260906, B-260907, B-260908, B-260909, B-260910, B-260911, B-260912, B-260913, B-260914, B-260915, B-260916, B-260917, B-260918, B-260920, all dated September 2, 1987, are reversed. The matters are remanded for computation of benefits consistent with this Opinion.