551 A.2d 651

Jane D. Hertzog, Petitioner *v.* Commonwealth of Pennsylvania, Department of General Services, Respondent.

Argued November 1, 1988, before President Judge CRUMLISH, JR., Judge McGINLEY, and Senior Judge NARICK, sitting as a panel of three.

*Rodney M. Fisher*, for petitioner.

*Joseph F. Greenfield*, Assistant Counsel, with him, *P. Alan Zulick*, Deputy Chief Counsel, *David A. Fitzsimons*, Assistant Counsel, and *William W. Warren, Jr.*, Chief Counsel, for respondent.

OPINION BY SENIOR JUDGE NARICK, December 16, 1988:

The matter before us is an appeal by Jane D. Hertzog (Petitioner), widow of Dallas H. Hertzog (Decedent), from a decision of the Department of General

Services (DGS) which affirmed a decision of the Bureau of Risks and Insurance Management (Bureau) denying Petitioner's $25,000 death benefit claim pursuant to Section 1 of the Act of June 26, 1976, P.L. 424, *as amended*, 53 P.S. §891 (Act 101).

Petitioner filed a claim under Act 101 for a $25,000 death benefit but the Bureau denied the claim. Petitioner appealed to DGS. Before the hearing examiner, the parties stipulated to the admission of certain items including, *inter alia,* the deposition testimonies of George E. Endy,[1] and David K. Franke.[2] The hearing examiner denied benefits concluding Decedent was not a law enforcement officer under Act 101 and was not killed in the performance of his duties as required by Act 101. This appeal ensued.

The relevant facts, as found by the hearing examiner, are as follows. On June 18, 1983, Decedent worked as a security guard at the Oley Township Heritage Festival. Afterwards, Decedent went to the Oley Township police station to visit with his friend Officer Franke. While at the police station, a call came in over the police radio that an armed robbery involving guns and knives was in progress in a neighboring township. Officer Franke decided to proceed to the scene of the robbery. Decedent asked Officer Franke if he could accompany him and was told by Officer Franke that he could not. Officer Franke thereafter proceeded to the robbery scene, unaware that following the police car was Decedent on his personal motorcycle. At an intersection a short distance from the police station, Dece-

---

[1] Mr. Endy was chief of police of Oley Township at the time of Decedent's death, and will hereinafter be referred to as Chief Endy.

[2] Mr. Franke was a police officer for Oley Township at the time of Decedent's death, and will hereinafter be referred to as Officer Franke.

dent's motorcycle collided with the rear of the police car operated by Officer Franke. On June 21, 1983, Decedent died as a result of this accident.

The hearing examiner made these additional findings with respect to Decedent's employment position with Oley Township. Decedent was a part-time security guard for the Township and in this capacity he would work at various public functions. If any problems arose, Decedent was required to notify a police officer. Decedent would appear at these functions in uniform; however, the Township never issued to Decedent a police uniform, badge, or any other police equipment. Decedent was given an outdated Oley Township police badge as a souvenir. The Township compensated Decedent for his services as a security guard. Decedent was not a full-time or part-time police officer, a special school policeman, or an auxiliary policeman for the Township. On occasion, Decedent would go to the Oley Township police station to talk with police officers. On several occasions, Decedent would show up at vehicle stops and similar matters in which Officer Franke was involved. Decedent never assisted Officer Franke on these occasions with his police work, but Officer Franke would sometimes use Decedent's name as a witness on incident reports.

Petitioner presents two issues for our review: (1) whether DGS erred in concluding that Decedent was not a law enforcement officer within the confines of Act 101; and (2) whether DGS erred in concluding that Decedent's fatal injuries did not occur while he was engaged in the performance of his duties as required by Act 101. For the reasons set forth herein, we affirm.[3]

---

[3] Our scope of review herein is a narrow one in that we are limited to a determination of whether constitutional rights were violated, an error of law committed, or necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704; *Estate of McGovern v. State Employees' Retirement Board*, 512 Pa. 377, 517 A.2d 523 (1986).

In order to qualify for the Act 101 death benefit, one must be "a law enforcement officer, ambulance service or rescue squad member or firefighter" who "is killed in the performance of his duties". Section 1 of Act 101, 53 P.S. §891. Petitioner contends that her husband falls within the definiton of law enforcement officer.

Section 2 of Act 101, 53 P.S. §892 relevantly provides:

'Firefighter, ambulance service or rescue squad member or law enforcement officer' means a firefighter, member of a volunteer fire company, member of an ambulance service or rescue squad, *peace officer as defined in 18 Pa. C. S. §501* (relating to definitions), public servant concerned in official detention as defined in 18 Pa. C. S. §5121 (relating to escape), an officer or employee of a State correctional institution, guards or employees of county jails and prisons or other law enforcement officer of the Commonwealth of Pennsylvania or any political subdivision thereof. (Emphasis added.)

Peace officer is defined in 18 Pa. C. S. §501 as *Any person who by virtue of his office or public employment is vested by law with a duty to maintain public order or to make arrests for offenses,* whether that duty extends to all offenses or is limited to specific offenses, or any person on active State duty pursuant to . . . 'The Military Code of 1949'. (Emphasis added.)

Petitioner contends Decedent was at least a *de facto* police officer because he took an oath of office as a special police officer and although never appointed by the board of supervisors to be a police officer as required by Section 590 of The Second Class Township Code[4]

---

[4] Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. §65590.

the police services he provided were authorized by the Township. However, Decedent was only authorized to work as a security guard for the Township, and chief Endy testified that Decedent had no power to arrest or maintain public order. His responsibilities consisted solely of letting his presence be known and alerting a police officer if there was any trouble. Also, Officer Franke testified he told Decedent he could not ride in the police car on June 18, 1983; the basis of Officer Franke's refusal being that the Township police officers had been advised by Chief Endy that *civilians* could not ride in police vehicles unless it was authorized or involved a police matter whereby a prisoner or suspect had to be transported. Thus, the decision of DGS is supported by substantial evidence and is in accordance with the law.

Alternatively, Petitioner contends that Decedent could be classified as a special school policeman. Section 599-A of The Second Class Township Code[5] provides:

> Upon request of the board of school directors of the school district of the township, the board of township supervisors, by resolution, may appoint special school police, who shall have the duty of controlling traffic at or near schools, and who shall be in uniform and shall display a badge or other sign of authority, and who shall be vested with all the power of local police officers. Such police shall serve at the pleasure of the board of township supervisors and shall not come within the civil service provisions of this act . . . Their compensation shall be fixed by the board of township supervisors and they shall be paid by the board of township supervisors . . .

---

[5] 53 P.S. §65599A.

Obviously, Decedent does not satisfy the criteria for a special school police officer. The testimony of record establishes that Decedent was never appointed by the board of supervisors to act as a special school police officer, that he never directed or controlled traffic at or near schools, that the Township never issued him a uniform or badge, and that Decedent did not have the power of local police officers in that he had no authority to maintain public order or make arrests.

As to the second argument raised by Petitioner, because we have determined Decedent was not a law enforcement officer within the confines of Act 101, we need not determine whether he was a law enforcement officer injured in the course of his duties. Accordingly, the decision and order of DGS is hereby affirmed.

ORDER

AND NOW, this 16th day of December, 1988, the order of the Department of General Services in the above-captioned matter is hereby affirmed.