553 A.2d 482

William S. Hasely, Petitioner *v.* Commonwealth of
Pennsylvania, Unemployment Compensation
Board of Review, Respondent.

Submitted on briefs November 16, 1988, to Judges DOYLE and McGINLEY, and Senior Judge KALISH, sitting as a panel of three.

*Anthony J. Kosciuszko*, for petitioner.

*Maribeth Wilt-Seibert*, Assistant Counsel, with her, *Clifford F. Blaze*, Deputy Chief Counsel, for respondent.

OPINION BY JUDGE McGINLEY, January 23, 1989:

William S. Hasely (Hasely) appeals from a decision of the Unemployment Compensation Board of Review (Board) affirming a decision of the Referee denying him benefits pursuant to Section 402(b) of the Pennsylvania Unemployment Compensation Law (Law)[1] due to voluntarily leaving work without cause of a necessitous and compelling nature. We affirm.

Hasely was last employed by Pilot Freight Company (Employer) as a dock supervisor. The Board made the following Findings of Fact:

1. The claimant was last employed by Pilot Freight Company [Employer] for one year as dock supervisor at a weekly salary of $550.00. His last day of work was November 27, 1987.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(b).

2. At time of hire, the claimant was informed that he could expect to work no less than fifty hours per week.

3. From November of 1986 until May 22, 1987, the claimant worked from 2:00 p.m. until 12:00 midnight five nights per week.

4. In May of 1987, the claimant was transferred from the position of outbound supervisor to inbound supervisor.

5. At the time of this transfer, the claimant's hours of work were changed from 10:00 p.m. until 6:00 a.m., Monday thru [sic] Thursday and on Sundays from 6:00 p.m. or 7:00 p.m. until 6:00 a.m., depending on the freight flow.

6. In November of 1987, the claimant was informed of a proposed further change in his hours of work from 9:00 p.m. until 7:00 a.m. Sunday thru [sic] Thursday.

7. As a result of this change, the claimant would not be required to start earlier on Sundays.

8. The claimant voluntarily terminated his employment because he was dissatisfied with the change in his hours of work.

9. Continuing work was available to the claimant had he desired to remain employed. [2]

The Office of Employment Security (OES) denied Hasely's application for unemployment compensation benefits based on Section 402(b) of the Law. Following a hearing the Referee issued a determination affirming the OES's denial of benefits. The Board issued a Decision and Order affirming the Referee and denying benefits. Hasely filed a Request for Reconsideration from the Board's decision which request the Board denied. Hasely

---

2 Board's Findings of Fact Nos. 1-9.

timely appealed to this Court from the Board's original order.

Hasely contends that certain of the Board's findings were not supported by substantial evidence and that the Board erred as a matter of law by concluding that Hasely did not have a necessitous and compelling reason to voluntarily terminate his employment, and that the Board erred by failing to make a specific credibility determination. Our scope of review is limited to determining whether the findings of fact are supported by substantial evidence, whether any error of law was committed or whether any constitutional rights have been violated. *Estate of McGovern v. State Employees' Retirement Board*, 512 Pa. 377, 517 A.2d 523 (1986).

Hasely does not specify the Findings of Fact which he claims are not based on substantial evidence, but the gist of his argument concerns the Board's failure to find that he was required to work two additional hours per day with no increase in pay, and that the Board erred by finding that he was hired with the understanding that he would be required to work no less than fifty hours per week.

Hasely's testimony concerning the number of hours he worked per week both coincides with and contradicts the Board's findings. Hasely testified that his original work hours were from 2:00 p.m. until 11:00 p.m., five days per week,[3] for a forty-five hour work week. Employer's witness, Thomas Ray (Ray), Terminal Manager, testified that Hasely's original hours were from 2:00 p.m. until 12:00 a.m., constituting a fifty hour work week.[4] The Board found that Hasely originally worked a

---

[3] Notes of Testimony, February 1, 1988 (N.T. February 1, 1988), at 2.

[4] Notes of Testimony, February 18, 1988 (N.T. February 18, 1988), at 3.

fifty hour per week work schedule as testified to by Ray.[5] Hasely testified that his job position changed and his new hours were from 9:00 p.m. until 6:00 a.m.[6] Hasely testified that his hours were then changed so that he worked from 10:00 p.m. until 6:00 a.m., Monday through Thursday, and from 6:00 p.m. or 7:00 p.m. until 6:00 a.m. on Sundays. This testimony coincided with the hours which the Board found that he worked.[7] Hasely then testified that his week-night hours were further changed, adding an hour on both ends of his shift, and that he would be working the same hours on Sunday as he worked prior to the change, thereby adding eight hours to his weekly work schedule.[8] The Board agreed that two hours were to be added to his week-night shift, but based on Ray's testimony, the Board found that Hasely's Sundays hours would be curtailed.[9] Consequently, there is substantial evidence to support the Findings of Fact concerning Hasely's hours of work.

Hasely also takes issue with the Board's Finding of Fact that at the time he was hired he was advised that he would be required to work no less than fifty hours per week. Hasely contends that this Finding of Fact was not based on substantial evidence because Employer's testimony was oral, via the telephone, and because Employer provided no written documentation to verify its claims.

Ray testified as follows that Hasely was originally hired to work no less than fifty hours per week:

QR: Alright. Mr. Ray, what was the original agreement of hire concerning the hours of work of Mr. Hasely?

---

[5] Finding of Fact No. 3.
[6] N.T. February 1, 1988, at 3.
[7] N.T. February 1, 1988, at 3; Finding of Fact No. 5.
[8] N.T. February 1, 1988, at 3-4.
[9] Findings of Fact Nos. 6-7; N.T. February 18, 1988, at 4.

AEW: The agreement with our corporation with Pilot Freight for all salaried and exempt employees is no less than fifty hours a week.

QR: No less than fifty?

AEW: Right, well, it could be less. It's—the fifty hours a week is the agreement.

QR: Okay. Now at the time of hire what were Mr. Hasely's scheduled hours of work, sir?

AEW: From 2:00 p.m. until 12:00 midnight.

QR: And how many nights a week?

AEW: Five.

QR: Five nights a week?

AEW: Yes, that's correct.

QR: Alright. At some point, was that changed?

AEW: That was changed on May 22nd, I believe.

QR: May 22, of 1987, sir?

. . . .

AEW: That's correct.

QR: Alright, sir. Did you have a written-agreement of hire, Mr. Ray?

AEW: We have an orientation form that Mr. Hasely initialed, stating that he understood his hours and shift.

QR: Can you tell me what that orientation says regarding hours of work?

AEW: Well, basically it says he understands his work schedule, hours and shift and that I have a job-order form that he was not required to sign but the job-order form does state that he works ten hours a day, fifty hours a week.

QR: Alright.

AEW: And that's part of Pilot's entire employment doctrine (INAUDIBLE) about policy.

QR: And that is [sic] documents called a job order?

AEW: It's called a job requisition form, employment requisition form.

. . . .

QCL: Now, as to this employment requisition, in your statement that you had provided to the Unemployment Compensation Board, you stated that there were employment records available as to an original employment agreement, which you would provide to the hearing officer if need be. Is there such an agreement and if so, was that agreement provided?

AEW: The initial form that I have is called a general management orientation form and that orientation form asks a specific question, if people understand their work schedule, hours and shift; and Bill was given that orientation and acknowledged it by his initials.

QCL: Are those particular hours and work schedule, are those specifically identified by hours or by times in that agreement?

AEW: No, we don't identify those on exempt employees because their hours are, of course, always subject to change and they do, depending on freight, depending on scheduling, depending on many, many things but the supervisor, their hours have to be totally flexible.

N.T. February 18, 1988, at 2, 4-5.

The record indicates that the existence of an agreement for hire had been referred to in Employer's Summary of Interview Statement.[10] The statement indicated that Employer would provide a copy of the agreement if

_____

[10] Record Item No. 4, Summaries for Interview, Exhibit 4.

the Referee requested a copy. The record does not reveal that the Referee made any such request, but the Notice of Telephone Hearing[11] which was sent to Employer contained the notice that "[s]hould you wish to include any additional documents please mail them immediately to the Referee in advance of the hearing date to insure receipt prior to the hearing." Employer did not send the agreement of hire to the Referee.

Hasely's attorney objected to Employer's testimony concerning the agreement for hire:

> ACL: Other than if we could just state for the record that part of employer's original statement was that he did have these particular records, either employment records or whatever, which were not provided and a—so we would ask that statements made and the information that he claimed was based on those particular documents should not be considered because they were not provided, either per—for viewing of claimant and his attorney or provided for the hearing officer.
>
> . . . .
>
> ACL: Basically what I said was that in your original statement that you had provided to the Unemployment Office, you claimed that there were certain records available as to employment contracts and original start-ups and that those record [sic] were not provided and that therefore, any information that was based in your statement that was relying on those particular records be not considered at this time.

N.T. February 18, 1988, at 8.

In *Knisley v. Unemployment Compensation Board of Review*, 93 Pa. Commonwealth Ct. 519, 501 A.2d 1180

---

[11] Record Item No. 8, Notices of Hearing on Original Appeal with Attachments, Referee Exhibit No. 5.

(1985) we noted that the use of telephonic hearings allowed for the potential of abuse in several respects, one of which concerned the reference to documents. We held that:

> [A]ny documents or records used by a witness while testifying must be revealed to the opposing parties and the factfinder so that the referee may determine whether such exhibits may be properly testified from.
>
> Until such time as the Board adopts regulations which incorporate certain minimum procedural safeguards, evidence obtained via telephone, if properly objected to, will be stricken from the record.

*Id.* at 523, 501 A.2d at 1182.

We are not aware, nor have we been so advised, that the Board has promulgated regulations incorporating minimum procedural safeguards concerning telephonic testimony. Hasely did not object to Employer's entire testimony, but a specific objection was lodged as to the testimony which was based on the agreement for hire. The Referee did not rule on the admissibility of such testimony, but Finding of Fact No. 2 unquestionably is based on that testimony. Having been properly objected to, there is no competent evidence to support Finding of Fact No. 2. Nevertheless, there was competent evidence to support the finding that Hasely originally worked fifty hours per week. As discussed in more detail below, the fact that Hasely originally worked fifty hours per week, irrespective of any agreement for hire, is dispositive of the issue whether or not he had necessitous and compelling reasons to terminate his employment. Therefore, Finding of Fact No. 2. is not a necessary finding, and the fact that it is unsupported by substantial evidence does not require a reversal of the Board's decision.

Hasely also contends that the Board committed two errors of law, first by failing to determine that he had necessitous and compelling reasons for voluntarily terminating his employment, and second by failing to make a determination of credibility.

Hasely had the burden to prove that he terminated his employment for cause of a necessitous and compelling nature. *Davis v. Unemployment Compensation Board of Review*, 105 Pa. Commonwealth Ct. 377, 524 A.2d 1033 (1987). He claims that the change in his hours, *i.e.*, working eight extra hours per week, with no extra pay, constituted cause of a necessitous and compelling nature. Hasely's factual contention is not supported by the record. The Board made an implicit credibility determination and accepted Employer's testimony that Hasely originally worked fifty hours per week. Thus, the change in his work schedule would not result in Hasely working more hours than he was originally required to work. This Court has held on numerous occasions that an employee who accepts a position admits the initial suitability of the work with respect to wages and conditions of employment and that, in order to be eligible for unemployment benefits after a subsequent resignation, the employee must show that the job conditions had changed or that he or she was misled by the employer as to the conditions which were later found to be objectionable. *Pressley Ridge School v. Unemployment Compensation Board of Review*, 60 Pa. Commonwealth Ct. 596, 598, 432 A.2d 299, 300-301 (1981). Hasely did not meet that burden. Instead, the Board found that Hasely voluntarily terminated his employment because he was dissatisfied with the change in his hours of work.[12] Mere dissatisfaction with the hours or conditions of one's employment does not constitute a cause of a necessitous and compelling

---

[12] Finding of Fact No. 9.

nature. Id. at 598, 432 A.2d at 301. Consequently, the Board's conclusion that Hasely did not meet his burden of proof was proper.

Hasely contends that because he met his burden of proof, the Board's decision could only have been based on a credibility determination and he contends that the Board erred by failing to comply with the requirement that the Board make specific determinations of credibility when the burdened party presents sufficient evidence and yet fails to prevail as set forth in *Kirkwood v. Unemployment Compensation Board of Review,* 106 Pa. Commonwealth Ct. 92, 525 A.2d 841 (1987).

As the discussion above indicates, Hasely's first premise, that he met his burden of proof, was in error. Moreover, the requirement that the Board make a specific credibility determination was not applicable in this matter. Hasely misstates the *Kirkwood* requirement. The *Kirkwood* requirement was limited to situations in which the party with the burden of proof was the only party to present evidence but that party did not prevail. Although Hasely was the party with the burden of proof, and although he did not prevail, the final criterion, *i.e.,* that the only party to present evidence was the party with the burden does not apply to the present controversy; both Hasely and Employer presented evidence. Consequently, the Board was not required to make a specific credibility determination.[13]

---

[13] Indeed, the Board made an implicit credibility determination when it accepted Employer's testimony that Hasely originally worked fifty hours per week.

Having thus disposed of Hasely's contentions of error, we affirm the decision of the Board.

ORDER

AND NOW, this 23rd day of January, 1989, the decision of the Unemployment Compensation Board of Review is affirmed.