639 A.2d 1337

**SHADYSIDE HOSPITAL/HERITAGE, Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (BERRY), Respondent.**

**Kathleen BERRY, Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (SHADYSIDE HOSPITAL), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 17, 1993.

Decided April 4, 1994.

Petition for Allowance of Appeal Denied Aug. 16, 1994.

154

Edward A. McFarland, for petitioner Shadyside/Heritage.

Edward J. Abes, for respondent Kathleen Berry.

Susan Shinkman, Chief Counsel, for amicus curiae, Dept. of Labor and Industry.

Before CRAIG, President Judge, and COLINS, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and KELLEY, Judges.

CRAIG, President Judge.

The Shadyside Hospital/Heritage (the hospital) appeals from the decision and order of the Workmen's Compensation Appeal Board that affirmed the decision of a referee to grant the reinstatement petition of the claimant, Kathleen Berry. The hospital contends that the 1993 amendments to § 422(a) of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 834, retroactively require the referee to produce a reasoned decision. In addition, Berry

appeals the decision of the board reversing the referee's award of chiropractic bills. We affirm in part and reverse in part.

The pertinent facts of this case, as found by the referee, are as follows:

1. The instant petition for reinstatement was filed by Kathleen Berry ... requesting the lifting of a suspension of compensation....

2. In accordance with the supplemental agreement dated January 29, 1990, benefits were suspended as of January 29, 1990, when Claimant returned to work. She had been receiving compensation for total disability at the weekly rate of $199.50 for a compensable low-back sprain she sustained on May 1, 1989.

3. At the time of said injury, Claimant was employed as a nurse's aide at average weekly wages of $221.31.

4. Based upon the testimony of Claimant and of Drs. Toth and Glasso, her work-related disability continued at all relevant times.

5. Based upon that same medical evidence, Claimant was able at times to perform the job of light-duty nursing assistant except that she was restricted to pushing or pulling or lifting not more than 20 pounds by Dr. Glasso on February 14, 1990. On January 26, 1990, Dr. Glasso released her for such work with a restriction of lifting not more than 30 pounds.

6. She actually returned to light work on January 29, 1990, but, because of her work-injury, was able to work only that one day. In this regard, Claimant's testimony is credible and relied upon. This finding is also supported by the testimony of the said physicians.

7. Intermittently, Claimant did perform the light-duty job when her work-injury permitted. She was unable to work on a regular basis because of her injury.

. . . .

9. Because of her work-injury, Claimant has been unable to perform her regular job from and after January 29, 1990.

10.  Because of her work-injury, Claimant has been unable to perform the work of light-duty nursing assistant from and after January 30, 1990, on a regular basis. And she has been unable to do that work on any basis from and after January 24, 1991, when she again became totally disabled due to her injury.

. . . .

14.  Claimant sustained her burden of proof. All of her evidence is credible and given probative value, especially her testimony. All of employer's evidence is not credible, is given no weight or probative value except its Exhibit "C."

[Summary of Berry's earnings after January 29, 1990.] As of January 24, 1991, the referee reinstated total disability benefits for Berry.

Both the hospital and Berry appealed the referee's decision to the board. The hospital argued that Berry did not present any evidence to establish that her chiropractic treatments were for her work injury, that there was no medical evidence that Berry could not perform the light-duty job offered by the hospital, and that there was no indication of a rational basis for the referee's credibility determinations which precluded meaningful appellate review. Berry argued that the referee erred in failing to award the proper amount due to her for litigation costs.

On March 12, 1993, the board issued its decision affirming the referee's decision reinstating Berry's compensation payments, but reversing the decision insofar as the referee required the hospital to reimburse Berry for the chiropractic treatments. The hospital and Berry filed notices of appeal to this court on April 19 and 23, respectively. On June 2, this court received the record from the board.

On July 2, 1993, Lieutenant Governor Singel signed Senate Bill No. 1, Session of 1993, into law. The bill amends portions of the Act (the "amendments" or the "1993 amendments"). Except for specifically enumerated articles, the bill provides that its provisions shall become effective 60 days after being signed, i.e., August 30, 1993. Section 422(a), which is in

dispute here, is not contained within one of the specifically enumerated articles. We received the hospital's brief 21 days after August 30.

The hospital now argues, in addition to the arguments it raised before the board, that the board erred in affirming the decision of the referee because the referee failed to produce a "reasoned decision" pursuant to the amendments to the Act [1]. Berry, on the other hand, argues that the board erred in reversing the referee's order insofar as the order had required the hospital to pay for Berry's chiropractic costs.[2]

## THE HOSPITAL'S APPEAL

### A. Retroactive Effect of the 1993 Amendments

■ The hospital argues that § 422(a) must be construed to be retroactive. According to the hospital, the referee's decision in this case must be a "reasoned decision" as mentioned in the amended Act despite the fact that the referee and the board ruled upon this case before the General Assembly enacted the amendments. The language of the amended § 422(a) is as follows:

Neither the board nor any of its members nor any referee shall be bound by the common law or statutory rules of evidence in conducting any hearing or investigation, but all findings of fact shall be based upon sufficient competent evidence to justify same. All parties to an adjudicatory proceeding are entitled to a reasoned decision, containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can

1. Normally, we are precluded from addressing issues not raised before the board. However, the history of this case indicates that the hospital's retroactivity argument could not have been raised at the board level. Therefore, under Pa.R.A.P. 1551(a)(3), we may consider the hospital's retroactivity argument.

2. Our standard of review is limited to determining whether the referee's findings of fact are supported by substantial evidence, and whether the board or the referee violated the claimant's constitutional rights, or committed an error of law. *Estate of McGovern v. State Employees' Retirement Board*, 512 Pa. 377, 517 A.2d 523 (1986).

determine why and how a particular result was reached. The adjudicator shall specify the evidence upon which the adjudicator relies in conformity with this section. The adjudication shall provide the basis for meaningful appellate review.

The normal rule of statutory construction is that laws must be given prospective effect. This rule is codified in the Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1501—1991 (the Statutory Construction Act), at § 1926 as follows: "No statute shall [be] construed to be retroactive unless clearly and manifestly so intended by the General Assembly." In this case, there is no language that clearly and manifestly directs us to interpret § 422(a) retroactively.

Nonetheless, the hospital contends that the Pennsylvania Supreme Court in *Page's Department Store v. Velardi*, 464 Pa. 276, 346 A.2d 556 (1975), applied amendments to the Act retroactively without a clear manifestation of a legislative intent to do so where the law merely affected legal procedures and not substantive legal obligations or entitlements. Specifically, in *Page's Department Store* the Supreme Court considered, among other things, whether the board was allowed to substitute its findings for those of the referee where the board did not take any additional evidence.

In *Page's Department Store*, between the time the referee filed a decision finding that no accident occurred for which compensation would be payable and the time the board heard the appeal, the 1972 amendments to the Act came into effect. Before the 1972 amendments, the board had been permitted to review a referee's decision fully, in terms of both law and fact without taking additional evidence. Under the 1972 amendments, the board was precluded from making its own findings of fact unless the board received new evidence.

The Supreme Court stated in a footnote that the 1972 amendments applied to the board's decision in *Page's Department Store.*

Although the incident giving rise to this claim and the filing of the claim petition occurred prior to May 1, 1972, the

effective date of the 1972 amendments, the appeal to the Board was heard and decided after that date. Legislation which affects substantive rights will not be construed to apply retroactively unless the legislature has expressly provided that it shall, but legislation which merely alters procedure will generally be applied to *pending proceedings.* A statute affects substantive rights if it alters a cause of action ... The definition which is perhaps most useful in making [a] distinction between substance and procedure is that a cause of action consists of "the group of operative facts out of which a grievance has developed." Thus, a "cause of action" may be defined as the factual basis for a claim, or, to put it another way, a set of facts which, if proved, would entitle a party to relief.

Changes in the scope of review of an appellate court or other reviewing body have been held to be procedural in nature, for they have no bearing upon a claimant's right to relief upon a given set of facts; such changes merely alter the susceptibility of the decision of a court or administrative officer or board to reversal or modification by an appellate court or other reviewing body. Thus, the changes in the Board's scope of review wrought by the amendments of Section 423, *being procedural in nature, are applicable to pending proceedings such as this claimant's appeal to the Board.* This is in contrast to the amendments made by the same Act to Section 301(a) and which eliminated the requirement of proof of an accident in workmen's compensation cases. The latter provision clearly alters the facts which a claimant must prove in order to establish entitlement to workmen's compensation benefits and is therefore not applicable to this claimant's case.

*Id.* at 283–284, fn. 5, 346 A.2d at 559–560, fn. 5 (citations omitted, emphasis added).

According to the hospital, the above language from the Supreme Court creates an exception to the presumption against retroactive construction of statutes. The hospital believes that "procedural legislation" may be applied retroactively even without a clear manifestation of such intent by the

General Assembly. Furthermore, the hospital argues that the reasoned decision requirement of § 422(a) is procedural legislation because it does not affect substantive rights of the parties, and that § 422(a) must therefore be given retroactive effect under *Page's Department Store*.

We do not agree. In *Page's Department Store*, the 1972 procedural amendments were applicable to the board's review because those amendments were in effect *before* the board heard the appeal. The case did not involve the application of procedural legislation retroactively to any phase of the proceeding which had occurred before the new enactment date. The court merely stated that changes in procedure will be applied to "pending proceedings".

In other words, even procedural legislation is given prospective effect, as it relates to the subject matter affected. The Pennsylvania Superior Court recognized long ago the confusion created by using the word "retroactive" to describe the use of procedural legislation to pending cases. In *Overmiller v. D.E. Horn & Company*, 191 Pa.Superior Ct. 562, 569–570, 159 A.2d 245, 248 (1960), the Superior Court stated the following:

> Because the procedural provisions of statutes are sometimes applied to cases in which the right to the claim arose before the effective date of the procedural statute, it is occasionally suggested that the rule requiring prospective operation of statutes does not apply to procedural provisions. Generally speaking, however, the application of statutory procedural provisions to pending cases is following the rule of the prospective operation of statutes, because *the new procedure applied to pending cases is that procedure which takes place after, and not before, the passage of the statute.* (Emphasis added.)

There is nothing in the amendments that clearly indicates that the General Assembly intended to address referees' decisions retroactively, i.e., to require the referee to redo a matter already completed. Therefore, we will not cause the referee to redo what was completed before the amended § 422(a)

came into effect because nothing in the Act rebuts the presumption found in the Statutory Construction Act against retroactive legislation.

Nevertheless, the hospital also raises three arguments which it suggests indicate a legislative intent to apply § 422(a) retroactively: (i) unlike other new amendments to the act, the hospital suggests that the additions to § 422(a) do not include specific time constraints limiting applicability until 60 days after the effective enactment date; (ii) § 422(a) addresses what the hospital characterizes as a "long recognized" need for clarification of referees' decisions, which, under § 1921(c)(3) of the Statutory Construction Act, 1 Pa.C.S. § 1921(c)(3), may be considered for purposes of interpreting the General Assembly's legislative intent; and (iii) the placement of the reasoned-decision requirement within the Act and its stated applicability to "all parties" suggests to the hospital that § 422(a) should act retroactively.

However, each of the hospital's three arguments above is based on inferences and not upon any clear manifestation of legislative intent. We cannot *deduce* a legislative intent to apply laws retroactively. We must be directed specifically by the language of a statute before we may interpret its provisions retroactively. Therefore, we cannot interpret § 422(a) to apply retroactively.

Furthermore, because the referee was not required to produce a reasoned decision under the 1993 amendments to § 422(a), we decline to decide now whether the decision of the referee as written would meet the standards of a reasoned decision. Therefore, we will review this decision under the Act as it existed on March 12, 1993, the day the board filed its order.

### B. Sufficient Facts for Appellate Review

■ The hospital argues that the referee failed to make sufficient findings of fact to permit meaningful appellate review. This court has previously stated that referees are not required to explain their thought processes. Rather, a referee's findings must be "sufficient to demonstrate that the fact-

finding function was performed." *McAfee v. Workmen's Compensation Appeal Board (Allegheny General)*, 134 Pa.Commonwealth Ct. 562, 579 A.2d 1363 (1990).

The necessary facts for a reinstatement of benefits proceeding are described in § 413 of the Act, 77 P.S. § 772, as follows: "[W]here compensation has been suspended ... payments under the agreement or award may be resumed at anytime during the period for which compensation for partial disability is payable, unless it be shown that the loss in earnings does not result from the disability due to the injury." In *McAfee* this court stated that the claimant's only burden is "to show that while his disability has continued, his loss of earnings has recurred.... [T]he burden then shifts to the employer who must either continue compensation payments or demonstrate the existence of a selective type job that the claimant is able to perform." *McAfee*, 134 Pa.Commonwealth Ct. at 569, 579 A.2d at 1367.

In this case, Finding of Fact No. 4 indicates that Berry's work injury is chronic. Number 10 demonstrates that Berry cannot work because of her injury. Number 14 reveals that the referee did not find the hospital's defense credible. These findings comprise a prima facie case for reinstatement of benefits. Therefore, the referee made sufficient findings of fact to allow us to perform meaningful appellate review.

### C. Substantial Evidence

The hospital does not dispute the fact that Berry met her burden of proof. Instead, the hospital contends that the referee's finding that Berry cannot perform the work provided by the hospital is not supported by substantial, competent evidence.

However, Berry is not required to prove that she cannot perform the work at the hospital. Rather, the hospital is required to prove that it offered work to Berry that she can perform. In the absence of such proof we must presume that a claimant is eligible for worker's compensation benefits. *Id.*

In this case, the referee found that none of the hospital's witnesses or exhibits (except for exhibit "C", *see* Finding of

Fact No. 14) was credible. Berry produced credible evidence that the hospital did not provide her work which she could perform. Without any credible evidence in the record to support the hospital's argument, the referee found that the hospital did not meet its burden of proof.

We cannot review determinations of credibility. Therefore, we must conclude that the referee acted properly in finding that Berry's income loss is attributable to her work injury.

██ The hospital's last argument on appeal [3], is that there is no evidence to support the referee's finding that Berry became totally disabled as of January 24, 1991. The hospital suggests that the referee selected this date merely because one of Berry's medical witnesses testified on January 24, 1991.

However, our review of the record shows that January 23 is the last day that Berry earned any wages at the hospital. Thus, January 24, the following day, marks the beginning of Berry's total inability to work at the hospital. Therefore, the referee did not err in selecting January 24, 1991 as the date that Berry became totally disabled.

## BERRY'S APPEAL

Berry also appeals the decision of the board. Berry contends that the board erred in reversing the referee's award of chiropractic fees because, according to Berry, the chiropractic treatment was causally connected to the work injury, and was reasonable and necessary. The board concluded that Berry failed to establish a causal relationship between the medical service and her work injury. Specifically, the board stated the following:

Defendant [the hospital] appeals the Referee's finding that the bill for Newman Chiropractic in the amount of $615.00 was reasonable and necessary. The bill itself indicates what services were provided ... an examination, office visit, neuromuscular re-education and radiology services. Defendant objected to the introduction of the bill which

---

**3.** The hospital did not address any of the arguments raised by Berry in her appeal, which follows below.

objection was sustained by the Referee. If the Referee sustained the objection to the submission, it is illogical that the Referee would eventually determine that the bill was reasonable and necessary. Also based on the sustaining of the objection, Defendant would have had no reason to introduce any contrary evidence. The Board believes that Claimant had the burden of proof in demonstrating that the medical bill is causally related to the work injury and that this burden was not carried by the bill and the testimony of Claimant that the services were for her back just after she was originally hurt. The award of the bill was not legally appropriate.

The board's use of the word "bill" in this context is ambiguous. We believe that the board uses "bill" to refer to the amount of money due to the chiropractic center rather than to the physical record of the amount owed. Therefore, the board concluded that the only evidence of the nature of the medical services provided was excluded from the record by the referee, who nonetheless characterized the expended $615.00 as reasonable medical expenses and placed the financial liability on the hospital.

According to the board, the referee committed a double injustice in ordering the hospital to reimburse Berry because the hospital never had a chance to present evidence which could have challenged the credibility of Berry's claim. Because the board felt that the burden of proof fell upon Berry to establish the necessity of her chiropractic expenses, the board decided that Berry failed to support her claim for medical expenses because her proffered evidence was not admitted into the record.

■ There are several errors with the board's resolution of this element of the parties' dispute. Berry visited her chiropractor before she signed the suspension of benefits. Therefore, these expenses are not subject to § 440 of the Act, 77 P.S. § 996, which allows for reimbursement of medical expenses that arise after the suspension of benefits. Rather, Berry's expenses fall under § 306(f) of the Act, 77 P.S. § 531,

which provides that, "[t]he employer shall provide payment for reasonable surgical and medical services, services rendered by duly licensed practitioners of the healing arts, medicines, and supplies, as and when needed...."

■ In addition, the hospital failed to file a petition affirmatively challenging Berry's expenses. *See* § 306(e) of the Act, 77 P.S. § 531(2)(ii). Therefore, this issue was never properly raised before the referee.

■ Furthermore, the board erred in concluding that there is no evidence in the record of the nature of the professional services provided to Berry. Our review of the record indicates that Berry provided evidence of those services. Although the referee initially sustained the hospital's objection to the admission of Berry's itemization of chiropractic expenses, the referee later admitted a different exhibit that establishes the nature of the professional services, as well as the costs, of Berry's chiropractic treatment, as follows:

Mr. Baumann [counsel for Berry]: At the last hearing an itemization of medical expenses was offered that includes $615.00 in bills from, I believe, Newman Chiropractic Center. An objection to those bills was raised at that time.

Referee: Well, I did not admit it, so there must have been an objection.

. . . . .

Baumann: In regard to that objection, that is why we obtained a report and offer that report.

. . . . .

Referee: What is the purpose of this then?

Baumann: This is only to offer—offered for the purposes of establishing that the bills were for treatment allegedly to the work injury.

Mr. McFarland [counsel for the hospital]: I have no objection to Dr. Zipay's February 26th report.

Referee: You have no objection?

McFarland: No objection.

Referee: That is Number 8, I believe.

Baumann: Yes, your Honor.

Referee: It is admitted. Since it is admitted, they have a lot of other things in here; diagnosis, treatment—

Baumann: We are offering it only for the causal connection, your Honor, of the bills to the work injury. We are not offering it for the salient issues of disability or ability to perform the job or our burden of proof on the Reinstatement Petition.

McFarland: I would just like to note that by not objecting I'm not agreeing that this relates these services to the injury. I have no objection to the Referee considering what the doctor says—

Referee: Just a minute, Mr. McFarland. Mr. Baumann offered it to show a nexus between the injury and the bill. You had no objection. It is admitted, and that is exactly what I am going to do. That is the purpose it was offered. I just happened to mention—I see there is diagnoses here and everything, and he [Baumann] said, "No, we are not offering it for that." So I marked down there what it was offered for, and it is admitted for that purpose.

Therefore, the record does not support the board's conclusion that the hospital did not have an opportunity to present evidence to contradict the causal connection. In fact, the hospital attempted to question the necessity of the treatments and the referee rejected the hospital's argument.

Accordingly, the board erred in reversing the referee's decision ordering the hospital to pay for Berry's chiropractic treatments, and we must reverse the board's decision on this point. However, the board's decision is otherwise legally sufficient. We cannot apply the amended § 422(a) of the Act retroactively and, therefore, affirm the remainder of the board's decision.

## ORDER

NOW, April 4, 1994, the order of the Workmen's Compensation Appeal Board, dated March 12, 1993, No. A92–1530, is

reversed regarding the award of chiropractic expenses, and is otherwise affirmed.