585 A.2d 550

**CHAMPION HOME BUILDERS COMPANY, Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (ICKES), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 28, 1990.

Decided Dec. 13, 1990.

Reargument Denied Feb. 14, 1991.

614

Michael J. Wagner, Andrews and Wagner, Altoona, for petitioner.

Timothy P. Creany, Pawlowski, Creany & Tulowitzki, Ebensburg, for respondent, Richard A. Ickes.

Before SMITH and PELLEGRINI, JJ., and SILVESTRI, Senior Judge.

PELLEGRINI, Judge.

Champion Home Builders Company (Champion) files a Petition for Review appealing an Order of the Workmen's Compensation Appeal Board (Board) affirming a Referee's Decision denying Champion's Petition for Modification of Compensation of benefits being received by Richard A. Ickes (Claimant).

Claimant suffered a work-related back injury during the course of his employment with Champion for which he has been receiving total-disability benefits under the Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 411. On April 18, 1988, Champion filed a Petition for Modification, alleging that Claimant had partially recovered from his injury and did not make a good faith effort to follow through on job referrals which were given him. The Referee dismissed the Petition and continued Claimant's benefits. Champion appealed to the Board which affirmed the Referee's Decision. Champion now appeals the Board's Order.[1]

[1] Our scope of review is limited to determining whether constitutional rights were violated, an error of law was committed, or findings of fact are not supported by substantial evidence. *Estate of McGovern v. State Employee's Retirement Board*, 512 Pa. 377, 517 A.2d 523 (1986); 2 Pa.C.S. § 704.

Champion contends that there is a lack of substantial evidence of record to support the Referee's finding that Claimant made a good faith effort to follow through on job referrals. Champion argues that the evidence shows that Claimant willfully sabotaged job referrals with Nibble with Gibbles, the Bedford County Library and Faith Amusements. Champion contends that written statements Claimant made on the applications and his conduct at an interview support their contention and entitled them to modification of his benefits.

Our Supreme Court in *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction),* 516 Pa. 240, 252, 532 A.2d 374, 380 (1987), set forth the following procedure governing the modification of benefits when the injured employee is able to return to work:

1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.

2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category *for which the claimant has been given medical clearance, e.g., light work, sedentary work, etc.*

3. The claimant must then demonstrate that he has in *good faith followed through on the job referral(s).*

4. If the referral fails to result in a job then claimant's benefits should continue. (Emphasis added.)

The Supreme Court in *Kachinski* went on to emphasize that both the employer and employee must act in good faith:

Obviously, the viability of this system depends on the good faith of the participants. The referrals by the employer must be tailored to the claimant's abilities, (citation omitted.), and be made in a good faith attempt to return the injured employee to productive employment, rather than a mere attempt to avoid paying compensation. By the same token, employees must make a good faith

effort to return to the work force when they are able, and their benefits can be modified for failure to follow up on referrals or *for willfully sabotaging referrals.*

*Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction)*, 516 Pa. at 252, 532 A.2d at 380 (emphasis added).

There is no dispute in the present case that Champion has satisfied its burden of producing medical evidence of a change in Claimant's condition. The Referee found that the testimony of Stanley R. Askin, M.D., a physician who examined Claimant on behalf of Champion, established that Claimant could perform fulltime light-duty work as of February 18, 1987.[2] (R.R. 96a, 104a–106a). Likewise, Claimant's treating physician, Winfried M. Berger, M.D. agreed that as of October 16, 1987, Claimant could begin performing sedentary work within the restrictions he had set forth. (R.R. 125a, 132a–133a).

What is in contention, however, is whether Champion has met its burden of producing evidence of referrals to open jobs within Claimant's occupational category, given his medical clearance. The employer has the burden of establishing that the suggested positions of employment are available at the time the claimant has been given medical clearance. *Mrs. Smith's Co. v. Workmen's Compensation Appeal Board (Gladfelter)*, 113 Pa.Commonwealth Ct. 25, 535 A.2d 1259 (1988). The employer must show that the claimant is able to physically perform the prospective jobs since claimant has no good faith obligation to pursue a

2. The Referee made the following relevant findings of fact concerning Claimant's change in condition:

7. In support of its Petition, the Defendant presented the testimony of Dr. Stanley R. Askin, who examined the Claimant on December 15, 1986, February 18, 1987, May 11, 1987, and August 3, 1987, at the request of the Defendant–Employer.

8. Dr. Askin testified that he completed a Work Capacity Determination Form on March 24, 1987, [sic] in which he stated that the Claimant could perform full-time light-duty work.

9. Dr. Askin further testified that at the time of his August 3, 1987, examination, he believed the Claimant was capable of performing full-time medium duty jobs.

Referee's Findings of Fact Nos. 7–9. (R.R. 261a).

referral for which he is not medically qualified. *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction)*. However, it is within the referee's province as fact-finder to determine whether the claimant can perform the job in question. *Farkaly v. Workmen's Compensation Appeal Board (Baltimore Life Insurance Co.)*, 516 Pa. 256, 532 A.2d 382 (1987); *Roadway Express Inc. v. Workmen's Compensation Appeal Board (Lewis)*, 113 Pa.Commonwealth Ct. 230, 536 A.2d 870 (1988).

Following the recommendation of Dr. Askin that Claimant could perform light-duty work, Champion provided Claimant with three job referrals.[3] The first job was referred to Claimant on November 10, 1987. The position was that of a route salesman for Nibble with Gibbles. (R.R. 44a). The second referral was made on January 27, 1988, and was for a position as a bookmobile librarian with the Bedford County Library. (R.R. 52a). The third referral was sent to Claimant on February 10, 1988, and was for a position as a telemarketing salesperson for Faith Amusements. (R.R. 63a).

Claimant disputes whether these referrals were actually open jobs within his occupational category as required by *Kachinski*. Claimant contends that all three referrals had job requirements that exceed Dr. Berger's initial medical limitations. Claimant points out that Dr. Berger completed an "Estimated Functional Capacity Form" on August 21, 1987, which stated that Claimant could "occasionally" lift or carry up to ten pounds but "never" over that. Dr. Berger also stated that Claimant would only be able to sit for a total of one hour a day and that his driving was "moderate[ly]" restricted. (R.R. 82a–83a).

Claimant argues that the job description for the position with Nibble with Gibbles requires lifting over one hundred five to ten pound cases of snacks a day, three to four hours

3. These referrals were sent certified mail to Claimant by William Reese, a rehabilitation consultant for Crawford Risk Management Services, which was hired by Champion to evaluate Claimant and seek suitable employment for him. All three referrals were received by Claimant through certified mail. (R.R. 45a, 53a, 64a).

of sitting and frequent driving of a standard shift van. (R.R. 46a–47a). Claimant further argues that the referral at the Bedford County Library required two to three hours sitting per day, lifting and carrying fifteen to twenty pounds, and frequent driving of the Bookmobile. (R.R. 55a). He also argues that the Faith Amusement referral required extensive sitting. (R.R. 68a).

■ However, despite the limitations Dr. Berger placed on Claimant, he signed the Nibble with Gibbles job description confirming that Claimant could function adequately on the job. (R.R. 48a–49a). Dr. Berger further stated at deposition that Claimant could also perform the jobs with the Bedford County Library and Faith Amusements.[4] (R.R. 126a–127a). Moreover, Dr. Askin approved all three positions. (R.R. 47a, 55a, 68a). Since there is sufficient medical evidence that Claimant could physically perform the referred jobs, we will not disturb the Referee's finding that the jobs were available.[5]

Since Champion has met its burden of showing that Claimant has recovered some physical ability and that they

**4.** However, the deposition at which Dr. Berger stated Claimant could perform the second and third referrals took place almost five months after the last referral, and as such, was an untimely medical clearance. *Mrs. Smith's Co. v. Workmen's Compensation Appeal Board (Gladfelter)*.

The reason why Dr. Berger never had the opportunity to sign the second two job descriptions acknowledging that Claimant could physically perform the jobs, was that he received a letter from Claimant on February 25, 1988, requesting that he have no further contact with Mr. Reese. (R.R. 57a). Following receipt of this letter, Dr. Berger discharged Claimant from his care and told him to seek help elsewhere. (R.R. 14a, 31a–32a). Claimant sent this letter on the advice of an attorney. (R.R. 39a).

**5.** The Referee made the following findings with respect to Claimant's ability to perform the jobs referred to him:

10. Dr. Askin reviewed job descriptions for Bedford County Book Mobile Librarian, Nibble with Gibbles route sales delivery, and Faith Amusements telemarketer and testified that the Claimant was capable of performing all of these jobs.

11. Dr. Winfried M. Berger, the Claimant's treating physician, testified by deposition and stated that the Claimant had the physical capabilities to perform the three jobs in question.

Referee's Findings of Fact Nos. 10–11. (R.R. 262a).

have referred open jobs within his occupational category, the burden shifts to Claimant to demonstrate that he has in good faith followed through with the job referrals.

Champion contends that the Referee erred in finding that Claimant made a good faith follow through on the referrals. Champion contends that Claimant sabotaged the first referral at Nibble with Gibbles by his conduct during the interview as evidenced by the Confidential Employer Response Form (Response Form). Champion further argues that Claimant made statements on the other two job applications which amounted to bad faith and willful sabotage.

■ Champion's first contention is that since the Response Form from Nibble with Gibbles rated Claimant's "willingness to work" as "poor", this shows Claimant lacked good faith in trying to secure that position. (R.R. 50a). We find that this Response Form in and of itself does not evidence lack of good faith on Claimant's part. The Response Form states that the reason the applicant was not considered for the position was that the "position [was] filled by a more capable person." (R.R. 50a). The Response Form gave Claimant a "good" rating for promptness, communication skills and conduct during the interview, and gave him an overall rating of "fair". (R.R. 50a). Although having the opportunity to do so, Champion failed to present any evidence as to why Claimant received a "poor" rating as to his willingness to work. As such, the responses on this form alone do not establish a willful sabotage of the interview by Claimant.

■ Champion's second contention is that Claimant sabotaged the job applications for Bedford County Library and Faith Amusements. On the Bedford County Library application, Champion refers to the fact that Claimant failed to answer the question "Are you available for work ... ___ Full time, ___ Part time ... [etc.].", instead writing "I'm under doctors care and as yet have not been released for work." (R.R. 59a). This application was signed by Claimant on January 30, 1988. On his application to Faith

Amusements, Champion points out that Claimant answered "Yes" to the question "Do you have any physical limitations that preclude you from performing any work for which you are being considered?" Then when asked "If yes, what can be done to accommodate your limitation?", Claimant wrote "Unknown as this time." (R.R. 71a). Claimant further described his limitations as having a "great difficulty sitting or standing for any extended period of time. When tired must lie down. Presently under Doctor's care." (R.R. 71a). This application was completed by Claimant on February 12, 1988.

The statements made on these applications do not amount to bad faith or willful sabotage. At the time of the applications to the Bedford County Library and Faith Amusements, and despite the fact that Mr. Reese had informed him that he could perform the job, Claimant believed that he was still under a doctor's care and had not been released to work. (R.R. 25a–26a, 31a–32a). Following Claimant's last visit to Dr. Berger on October 16, 1987, and his letter of February 25, 1988, requesting no further contact between Dr. Berger and Mr. Reese, and subsequent discharge, *See* Footnote # 4, Claimant began to see Dr. Ridella, whom he had office visits with in March and May of 1988. (R.R. 14a–15a). Thus the assertion that he was still under a doctor's care was not a false or deceptive statement.

Claimant further testified that the reason he stated on his application that he had physical limitations was because he has great difficulty sitting for long periods of time. (R.R. 28a). Claimant testified that if the application asked about his physical limitations, he would put them down, and "[i]f they asked me to elaborate, I did to the best of my knowledge." (R.R. 32a–33a). Thus, at the time Claimant filled out these applications, given Dr. Berger's limitations, he was not entirely sure whether he could physically perform the positions referred. Furthermore, Champion failed to present any evidence as to the effect these statements had on the prospective employers.

■ A lack of a good faith follow through may be shown by a failure to apply for referred jobs which come within the claimant's physical limitations. *Associate Plumbing v. Workmen's Compensation Appeal Board (Hartzog),* 126 Pa.Commonwealth Ct. 618, 560 A.2d 865 (1989). Here, the evidence of record shows that Claimant received the referrals and promptly and fully completed applications to each. He received one interview but did not obtain the job. There is substantial evidence to support the Referee's conclusion that Claimant in good faith followed through with the job referrals. Interpreting the evidence as did the Referee, it shows that Claimant was trying to be honest with his responses concerning his disability and was unsure of his physical ability to perform the job. Because of the Referee's findings, this does not amount to a willful sabotage on his part.

Accordingly, the Order of the Board affirming the Referee's Decision is affirmed.

## ORDER

AND NOW, this 13th day of December, 1990, the Order of the Workmen's Compensation Appeal Board dated March 9, 1990 is affirmed.