**GARDEN STATE TANNING, INC., Petitioner,**

v.

**DEPARTMENT OF LABOR AND INDUSTRY, BUREAU OF EMPLOYER TAX OPERATIONS, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 1995.

Decided Dec. 13, 1995.

Paige MacDonald–Matthes, for petitioner.

Jane C. Pomerantz, Deputy Chief Counsel, for respondent.

Before McGINLEY and FRIEDMAN, JJ., and KELTON, Senior Judge.

McGINLEY, Judge.

Garden State Tanning, Inc. (Garden State) petitions for review of the Department of Labor and Industry's (Department) assessment of unemployment compensation contribution rates.

Garden State began paying wages for Pennsylvania unemployment compensation tax purposes on April 1, 1988. After a lengthy delay, in 1991 the Bureau of Employer Tax Operations (Bureau) notified Garden State of its unemployment compensation contribution rates for the years 1988 through 1991. Thereafter, the Bureau revised Garden State's contribution rates for certain years. Garden State sought review and redetermination of the revised contribution rates.

The Bureau denied Garden State's request and ascertained that Garden State was a successor-in-interest under Section 301(d)(1)(B) of the Unemployment Compensation Law (Law)[1] because Garden State had acquired an interest in Kidde, Inc. (Kidde), a Pennsylvania corporation. Garden State appealed contending that the Bureau did not notify Garden State of the rate revisions in a timely manner as required under Section 301(j) of the Law, 43 P.S. § 781(j), and that the Bureau erred in treating Garden State as a successor-in-interest under Section 301(d)(1)(B), 43 P.S. § 781(d)(1)(B).

The Department held a hearing in this matter on November 16, 1993. The Bureau presented Ronald Kellner (Kellner), the Unemployment Compensation Tax Office Manager who investigated the commonality of ownership between Kidde and Garden State. In the course of this investigation, Kellner discovered that Kidde was acquired by Hanson Industries, Inc. (Hanson Industries) on December 7, 1987; that Garden State was a division of Kidde at the time of the acquisition; and that as of December 7, 1987, Hanson Industries owned both Garden State and Kidde. Notes of Testimony, November 16, 1993, (N.T.) at 7–8; Reproduced Record (R.R.) at 10a–11a. Kellner concluded that Garden State and Kidde were both owned and controlled by Hanson Industries. N.T. at 8; R.R. at 11a. The Bureau also presented Frank Jackson (Jackson), Assistant Director for the Bureau's Tax Accounting Division, who was also involved in the investigation. Jackson confirmed that Hanson Industries owned Garden State and Kidde. N.T. at 23–22, 27; R.R. at 26a–27a, 30a.

Garden State presented no testimony, but did cross-examine the Bureau's witnesses. In addition, the Bureau and Garden State introduced several exhibits including the Employer's Initial Statement (UC–1) wherein Garden State indicated the purchase of its predecessor Kidde's accounts receivable, buildings, machinery, equipment, leases, furniture and fixtures and that Garden State was 100% owned by Hanson Industries. Bureau's Exhibit No. 1, Employer's Initial Statement; R.R. at 59a. The Bureau also introduced the prospectus of a merger between Hanson Industries and Kidde which indicated that Hanson Industries owned "a sufficient number of Kidde [s]hares to approve the [m]erger [a]greement without the vote of any other Kidde stockholder." Bureau's Exhibit No. 2, Notice of Stockholder's Meeting, December 7, 1987; R.R. 61a.

In consideration of Garden State's appeal the Department made the following relevant findings:

3. Notice of Subjectivity was mailed to Garden State Tanning, Inc., on July 21, 1989, by the Bureau ... acknowledging receipt of Employer's Initial Statement, Form UC–1, signed by Edna Eichelbaum, Assistant Secretary....

4. Form UC–1, as submitted by Ms. Eichelbaum, reflected that the present business, Garden State Tanning, Inc. was acquired from a predecessor, listed the name and account number of the predecessor, listed the assets acquired, and reflected that the acquisition was the result of a purchase of part of the business of Kidde, Inc.

5. Handwritten information of unknown origin reflected that the common stock of Garden State Tanning, Inc. was owned entirely by Hanson Industries.

6. [The Bureau's] Status Determinations Unit approved a determination of "partial mandatory," [sic] relating to the experience transfer on August 28, 1990.

7. [The Bureau] issued the initial notice of contribution rate for calendar year 1988 after April 19, 1991, according to the rate directive on the Employer's Initial Statement.

8. [The Bureau] issued the initial notice of contribution rate for calendar year 1989, on May 3, 1991.

9. [The Bureau] issued the initial notice of contribution rate for calendar year 1990, on June 3, 1991.

10. [The Bureau] issued the initial notice of contribution rate for calendar year 1991, on April 26, 1991.

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 781(d)(1)(B).

11. A revised notice of contribution rate for calendar year 1989 dated June 3, 1991, increased the rate of contribution for 1989.

12. A revised notice of contribution rate for calendar year 1991 dated June 20, 1991, reduced the rate of contribution for 1991.

13. Letters dated May 13, 1991, and June 13, 1991, from [the Bureau] detail the determinations of [the Bureau] regarding the assignment of contribution rates for Garden State Tanning, Inc., as a mandatory partial successor to Kidde, Inc.

Final Decision and Order of the Department, November 14, 1994, (Decision) at 2–4, Findings of Fact (F.F) 3–13; R.R. at 125a–127a.

The Department ruled in favor of Garden State with respect to the 1989 rate and revised Garden State's contribution rate for that year, but the Department affirmed the Bureau's denial of review and redetermination of the rates for 1988, 1990 and 1991. The Department held that "there is no basis for application of the provisions of Section 301(j) to contribution rates for 1988, 1990 and 1991" because "[i]n order for Section 301(j) to be operable, [the Bureau] must first find that it has erroneously assigned the employer a contribution rate that is less than the employer is entitled, that is [the Bureau] believes the employer's rate should be increased." Decision at 7; R.R. at 130a.

The Department also held that the Bureau properly transferred a portion of Kidde's experience record and reserve account balance to Garden State in accordance with Section 301(d)(1)(B) of the Law, because the Bureau found that they were both owned and controlled by the same interest, Hanson Indus-

tries. Garden State now petitions for review of the Department's decision.[2]

■ Garden State first contends that the Bureau did not notify Garden State of changes in the unemployment compensation contribution rate for 1988 and 1990 before December 31, of those years as required by Section 301(j).[3]

Section 301(j) of the Law, 43 P.S. § 781(j), provides in pertinent part:

If the department finds that it erroneously notified an employer that his rate of contribution is less than the rate to which he is entitled, he shall be notified of the revision of his rate and he shall be required to make payment of additional contributions on the basis of the revised rate: Provided, That [sic] no such additional contribution shall be required unless the employer is notified of his revised rate not later than December thirty-first of the calendar year to which the rate is applicable, unless the Department finds that the employer has directly or indirectly contributed to the error.

The Department determined, and we agree, that Section 301(j) is not applicable unless the Bureau erroneously assigns an employer a rate of contribution that is less than the rate to which he is entitled and seeks to increase it at a later date. At the Department hearing Jackson testified that April 19, 1991, was "the first time the official rate notice was assigned to Garden State Tanning." N.T. at 39; R.R. at 42a. The Department accepted into evidence the *initial* notice of contribution rate for 1990, dated June 3, 1991.[4] There is no evidence of

**2.** Our scope of review is limited by Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704, to determining whether the necessary findings of fact are supported by substantial evidence, whether the Department committed an error of law, or whether the petitioner's constitutional rights were violated. *Estate of McGovern v. State Employees' Retirement Board*, 512 Pa. 377, 517 A.2d 523 (1986).

**3.** Garden State's petition for review states that it "seeks review of the Order insofar as it affirmed the unemployment contribution rates for 1988 and 1990." Petition for Review at 2, Paragraph 7. The statement of objections will be deemed to include every subsidiary question fairly com-

prised therein. Pa.R.A.P 1513(a). However, the maxim *Expressio unis est exclusio alterius*, meaning that the expression of one thing is the exclusion of another applies here. Scrutiny of the petition for review reveals no protest to the 1989 and 1991 rates. The only relief sought by Garden State is "redetermination of the rates for 1988 and 1990...." Petition for Review at 3, Paragraph 9. Therefore, Garden State's 1989 and 1991 contribution rates are not before us.

**4.** The record reveals that some of the initial contribution rate notices were marked as revised, but Jackson explained the discrepancy as follows. The Department's presiding officer, Linda S. Hassenplug (P.O.), to Jackson (B.W.2):

record that the 1988 rate was revised after it was initially set on April 19, 1991, or that the 1990 rate was revised after it was initially set on June 3, 1991. Absent evidence of an upward revision of these rates there is no relief available to Garden State under Section 301(j).

 Garden State next contends that, in calculating the contribution rates, the Bureau erroneously transferred a portion of Kidde's experience record and reserve account balance to Garden State.

Section 301(d)(1)(B) of the Law, 43 P.S. § 781(d)(1)(B), provides in pertinent part:

[W]ith respect to any transfer by an employer subject to the contribution provisions of this act of its organization, trade or business, in whole or in part, whether such transfer was by merger, consolidation, sale or transfer, descent or otherwise, the department shall transfer the experience record and reserve account balance (whether positive or negative) of such employer to its successor-in-interest if it finds that (I) such employer was owned or controlled by or owned or controlled the successor-in-interest either directly or indirectly, by legally enforcible [sic] means or otherwise or (II) both such employer and successor-in-interest were owned or controlled either directly or indirectly, by legally enforcible [sic] means or otherwise, by the same interests or interest.

 Here, the successor-in-interest, Garden State, indicated in its UC–1 that it acquired a substantial portion of its predecessor's business and assets, Kidde's.[5] Additionally, the record reveals that both Garden State and Kidde were owned by the same interest, Hanson Industries. Any amount of a business that is transferred, in whole or in part, can trigger the mandatory transfer of an experience record and reserve account balance under Section 301(d)(1)(B). The Department correctly upheld the partial transfer of Kidde's experience record and reserve account balance to Garden State.

We affirm the Department.

### ORDER

AND NOW, this 13th day of December, 1995, the order of the Pennsylvania Department of Labor and Industry in the above-captioned matter is affirmed.

---

P.O.   I'm still confused. Why are these initial contribution rate notices marked as being revised?
B.W.2   The only thing I can possibly project is that it might be a typo that it was marked revised when, in fact, they shouldn't have been.
P.O.   Is it normally the Bureau's procedure to use the word revised on an initial rate notice?
B.W.2   No.
P.O.   Can you confirm that there were no tax contribution rate notices issued to this employer prior to these?
B.W.2   Yes, it's [sic] the only rate notices we have in our files.

N.T. at 41; R.R. at 44a.

5.   In response to question six on the UC–1, Garden State listed Hanson Industries as the owner of 100% of its outstanding shares of stock. In response to question twelve on the UC–1 Garden State answered "[y]es", that its business was acquired from a predecessor. In response to question thirteen Garden State indicated that its predecessor was Kidde. R.R. at 59a. In response to questions eighteen and nineteen on the UC–1, Garden State indicated that it purchased Kidde's accounts receivable, buildings, machinery, equipment, leases, furniture and fixtures. R.R. at 60a.