**Robert REIF, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (FUNKS HAULING SERVICE), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 3, 1997.

Decided Oct. 2, 1997.

Eric Gavin Marttila, Philadelphia, for Petitioner.

Paul V. Tatlow, Philadelphia, for Respondent.

Before PELLEGRINI and FLAHERTY, JJ., and MIRARCHI, Jr., Senior Judge.

PELLEGRINI [1], Judge.

Robert Reif (Claimant) petitions for review of the January 29, 1997 order of the Workers' Compensation Appeal Board (Board) which affirmed an order of a Workers' Compensation Judge (WCJ) dismissing Claimant's petition for penalties.

On March 27, 1981, Claimant was injured during the course of his employment with Funk's Hauling Service (Employer). Claimant received workers' compensation benefits pursuant to a Notice of Compensation Payable. In the Notice of Compensation Payable, his injuries were described as "right and left calf, right hip, right shoulder and neck contusion."

In April, 1982, Employer filed a termination petition alleging the Claimant had fully recovered from his work-related injury, and a hearing was held before Referee Irwin Stander. Medical experts for both Claimant and Employer testified as to Claimant's work-related injury. On behalf of Claimant, three medical doctors, including Martin Goldstein, D.O., a board-certified psychiatrist, testified. Dr. Goldstein opined that as a result of Claimant's work-related injury, he suffered from post-concussion syndrome and post-traumatic psychosis with associative paranoid features. He explained that Claimant's accident at work, in conjunction with what Claimant was prior to the accident and ensuing occurrences which came after the accident, had such an effect on him as to cause him to have paranoid symptoms, which Dr. Goldstein described as being psychotic in nature. Dr. Goldstein went on to describe his treatment of Claimant through therapy and anti-psychotic medications.

Based on the testimony of Dr. Goldstein as well as on the testimony of Claimant's other treating physicians, Referee Stander, by decision dated June 6, 1984, denied Employer's termination petition. Finding that Claimant was unable to perform the duties of his former job and had partially recovered from his work-related injury so that he was capable of performing light and sedentary work,[2] he ordered Claimant's benefits to be modified to partial disability benefits. While Referee Stander did not differentiate between the medical bills relating to Claimant's physical injury and those relating to his psychic injury, or explicitly state that either Claimant's physical or his mental condition were directly related to his work-related injury, he ordered that the bills for medical services provided by Claimant's physicians, including Dr. Goldstein, were reasonable and necessary. This order was never appealed.

On June 24, 1991, Claimant filed a petition for penalties [3] alleging that Employer had violated the Workers' Compensation Act [4] by failing to pay certain medical bills for treatment necessitated by his March 27, 1981 work-related injury. Employer subsequently filed a petition for review of medical treatment and/or medical bills, alleging that the medical bills for which Claimant sought payment were for treatment of a psychiatric condition which did not arise from his work-related injury.

At the hearings before WCJ Scott Olin, Employer presented the testimony of Timothy Michals, M.D., a board-certified psychiatrist, who testified that Claimant had no evidence of any diagnostic criteria of a mental disorder and found no evidence that Claimant had any psychiatric disorder resulting from his March, 1981 work-related injury. Dr. Michals further opined that Claimant showed no evidence of any psychiatric disorder which required treatment.

Claimant offered the testimony of John Yardmudian, D.O., a physician board-certified in general psychiatry and geriatric psychiatry, who had treated Claimant from March 25, 1987, until September 28, 1987. Dr. Yardmudian diagnosed Claimant as suffering from post-traumatic stress, dysthymic

1. This opinion was reassigned to the authoring Judge on September 4, 1997.

2. Referee Stander further found that Employer had sustained its burden of proving that jobs within these classifications were generally available in the metropolitan area.

3. The WCJ treated Claimant's petition for penalties as a petition for review of the notice of compensation payable and/or for payment of medical bills.

4. Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §§ 1—1041.4.

disorder and residuals of post-concussion syndrome, which he opined to be causally related to the work injury sustained by Claimant in March of 1981. Claimant also offered the same deposition testimony of Dr. Goldstein as was before Referee Stander.

Based on the testimony of Dr. Michals, WCJ Olin determined that the Employer was not required to pay Claimant's psychiatric bills because they were not related to his work-related injury.[5] Claimant then appealed to the Board contending, *inter alia,* that the prior determination of Referee Stander established the causal connection between his psychological condition and the work-related injury.

While agreeing with Referee Stander's prior adjudication by accepting the psychiatrist's bills as reasonable necessarily led to the conclusion that Claimant's psychic injury was causally related to the work accident, the Board held it was not controlling. The rationale behind that conclusion was that Referee Stander's decision involved a termination petition filed by Employer where Claimant was not required to prove the connection between his psychic injury and work accident, unlike in the penalty petition, where he had the burden, but failed to sustain it. Because it held that Referee Stander's decision was not controlling, the Board affirmed the WCJ's order dismissing Claimant's penalty petition and this appeal followed.[6]

■ Before us, the issue is whether WCJ Olin was collaterally estopped from finding that Claimant's psychic injury was not causally connected to his work-related injury by the prior determination of that issue by Referee Stander.[7] The doctrine of collateral estoppel provides:

[W]here particular questions of fact essential to the judgment are actually litigated

and determined by a final valid judgment, the determination is conclusive between the parties in any subsequent action on a different cause of action. Where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel in the second action only to those matters in issue.

*Patel v. Workmen's Compensation Appeal Board (Sauquoit Fibers Co.),* 88 Pa.Cmwlth. 76, 488 A.2d 1177 (1985), *petition for allowance of appeal denied,* 515 Pa. 616, 530 A.2d 869 (1987), *quoting, McCarthy v. Township of McCandless,* 7 Pa.Cmwlth. 611, 300 A.2d 815, 820–21 (1973).

■ Even where the cause of action is different, and notwithstanding which party had the burden, collateral estoppel provides that a determination of fact in a prior action is deemed conclusive between parties in a subsequent action, provided that the fact was actually litigated in the prior action, was essential to the judgment, and was determined by valid and final judgment. *Burr v. Callwood,* 374 Pa. Superior Ct. 502, 543 A.2d 583 (1988), *petition for allowance of appeal denied,* 520 Pa. 594, 552 A.2d 249 (1988).

There is no dispute here that the parties are the same. The finding of fact at issue, whether Claimant's psychic condition was causally related to his work-related injury, is also the same. Claimant's psychic condition was essential to Referee Stander's judgment, otherwise medical bills for psychological counseling and treatment would not have been paid and, in part, the existence of that condition caused Employer's termination petition to be denied. Finally, Referee Stander's order was valid, final and unappealed. Because Claimant's psychic condition was already determined to be causally related to

---

5. WCJ Olin also dismissed Employer's petition for review as moot.

6. Our scope of review of a decision of the Board is limited to a determination of whether constitutional rights have been violated, errors of law committed, or whether substantial evidence supports the necessary findings of fact. *Estate of McGovern v. State Employees' Retirement Board,* 512 Pa. 377, 517 A.2d 523 (1986).

7. Section 301(c) of the Workers' Compensation Act defines "injury" as used in the Act as: "... an injury to an employe regardless of his previous physical condition, arising in the course of his employment and related thereto ...". 77 P.S. § 411(1). And, Section 306(f) of the Act provides that "[t]he employer shall provide payment for reasonable surgical and medical services, services rendered by duly licensed practitioners of the healing arts, medicines, and supplies ...". 77 P.S. § 531(1).

his work-related injury in the termination proceeding, it is controlling, and that same issue may not be relitigated merely because who has the burden is different.

█ As to the imposition of penalties, Employer unilaterally stopped paying all medical bills for both physical and psychological injuries sustained by Claimant.[8] Though Employer, after Claimant's penalty petition was filed, did pay medical bills relating to Claimant's physical condition, it refused to pay those relating to his psychic injury. It is a clear and unacceptable violation of the Workers' Compensation Act for an employer to unilaterally refuse to pay a claimant's medical bills, *Moats v. Workmen's Compensation Appeal Board (Emerald Mines)*, 138 Pa.Cmwlth. 449, 588 A.2d 116 (1991), and the imposition of penalties is proper. *Loose v. Workmen's Compensation Appeal Board (John H. Smith Arco Station)*, 144 Pa. Cmwlth. 332, 601 A.2d 491 (1991). Because Referee Stander ordered the payment of both physical and psychological medical bills, and Employer unilaterally ceased paying the psychological bills, the Board erred by refusing to grant Claimant's penalty petition.

Accordingly, the order of the Board is reversed and the case remanded for determination of the penalties to be awarded.

### ORDER

AND NOW, this 2nd day of October, 1997, the January 29, 1997 order of the Workers' Compensation Appeal Board, No. A95–0694, is reversed, the penalty petition of Robert Reif is granted, and the case remanded to a WCJ for a determination of the amount of penalties to be awarded Reif.

Jurisdiction relinquished.

MIRARCHI, Jr., Senior Judge, dissents.

---

8. Claimant, in his penalty petition, has requested penalties in the amount of $7,140, allegedly representing 120% of the compensation to which he was entitled but not paid. This amount includes $2,350 owing to Dr. Yardmudian for psychiatric treatment, $2,225 owed to "University Services" for neuropsychological testing and evaluation, and $1,375 owing to Dr. Leshner for general medical treatment and supervision. Prior to WCJ Olin's decision, Employer paid Dr. Leshner the $1,375, and WCJ Olin assumed that was because those services were for the treatment of Claimant's physical and not psychological condition.