IN THE COMMONWEALTH COURT OF PENNSYLVANIA

DTE Energy Company, Inc.          :
and Old Republic Insurance        :
Company,                          :
                    Petitioners   :
                                  :
          v.                      :   No. 418 C.D. 2020
                                  :   Submitted: September 18, 2020
Workers' Compensation Appeal      :
Board (Weatherby),                :
                    Respondent    :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge[1]
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED: January 28, 2021

          DTE Energy Company, Inc. and Old Republic Insurance Company
(collectively, Employer) petition for review of an adjudication of the Workers'
Compensation Appeal Board (Board) that granted Jeffrey Weatherby's (Claimant)
petition for penalties under the Workers' Compensation Act (Act).[2]  In doing so, the
Board affirmed the decision of the Workers' Compensation Judge (WCJ) that
Employer had violated the Act by not paying certain medical expenses related to
Claimant's 1988 work injury.  Upon review, we affirm.

## Background

          On March 21, 1988, Claimant sustained a work injury.  Employer
accepted liability in a notice of compensation payable (NCP) that identified the work

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Leavitt
completed her term as President Judge.

[2] *See* Section 435 of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*,
added by the Act of February 8, 1972, P.L. 25, 77 P.S. §991.

injury as a "Leg/Back" injury. Certified Record (C.R.), Item 24, at 1. Claimant continued working until July 17, 1988, and then collected total and partial disability benefits sporadically until March 7, 1994, at which time he returned to work for a different employer. Accordingly, Claimant's disability benefits were suspended as of March 13, 1995.

On December 3, 2015, Claimant and Employer entered into a Compromise and Release (C&R) Agreement, which provided that Employer remained responsible for certain medical bills incurred to treat Claimant's "Leg/Back" work injury. C.R., Item 19, at 5. The C&R Agreement addressed the question of Employer's liability for Claimant's August 9, 2014, low back fusion surgery as follows:

> There is currently pending a petition for penalties relative to medical treatment in the nature of fusion surgery at L1-L2 through S1 performed August 9, 2014. *This C&R does not resolve or dispose of the issue brought by that petition, i.e., whether the August 9, 2014 surgery and related expenses are causally related to the March 21, 1988 injury* and therefore, the responsibility of Employer....

C.R., Item 19, at 7 (emphasis added).

In January 2016, WCJ Cheryl Ignasiak denied Claimant's penalty petition, holding that Employer was not liable for Claimant's 2014 low back surgery. In so concluding, WCJ Ignasiak credited the opinion of Thomas Kramer, M.D., that Claimant had attained maximum medical improvement as of May 2009, at which time surgery was found not to be needed. Specifically, WCJ Ignasiak found, as fact, the following:

> Based on the October 13, 2014 and January 15, 2015 medical reports of Dr. Thomas Kramer, M.D., this [WCJ] finds as fact that Dr. Kramer evaluated [C]laimant in May 2009 regarding the

2

March 21, 1988 work injury. Dr. Kramer also performed updated record reviews regarding whether the surgery in August 2014 was related to the work injury that occurred 26 years prior. This [WCJ] accepts Dr. Kramer's medical opinion there is no clear cut correlation of a need for the surgery that was performed in August 2014 to the work injury of March 1988. *By May 2009, [C]laimant had achieved his maximum degree of medical improvement and no surgery was recommended or needed. Thus, the surgery performed August 19, 2014[3] was not related to the work injury of March 21, 1988. There is no further treatment that is necessary or that can be expected in the future relative to the low back condition as a result of the March 21, 1988 work event.*

WCJ Ignasiak Decision, Finding of Fact (F.F.) No. 4; C.R., Item 25, at 5 (emphasis added).

On May 9, 2018, Claimant filed the instant penalty petition, alleging that Employer violated the Act by not paying for medical expenses related to Claimant's 1988 work injury. In response, Employer maintained that the doctrine of collateral estoppel barred Claimant's new penalty petition because WCJ Ignasiak had found, as fact, that Claimant had reached maximum medical improvement and that "no further treatment [] is necessary" for his 1988 work injury. *Id.* The new penalty petition was assigned to WCJ Steven Minnich.

In support of his penalty petition, Claimant testified that since his 1988 work injury, he has had several surgeries, including a spinal fusion at L4-S1 in September 1988 and an implantation of a spinal cord stimulator in 2009. In March 1994, he returned to work as a respiratory therapist with a different employer, but in May 2014, he left for neck surgery and has not worked since. He has since been

---

[3] While the C&R Agreement stated that Claimant's back surgery was performed on August 9, 2014, WCJ Ignasiak's decision and the medical records provided that the surgery was performed on August 19, 2014.

3

diagnosed with adhesive arachnoiditis. Claimant's neck and low back surgeries performed in 2014 were determined to be unrelated to his 1988 work injury.

Claimant continues to treat with Dr. Abraham Kabazie for pain management with different courses of pain medications. Claimant also receives trigger point injections in his low back and legs. His wife's health insurer has paid for these medications because Employer denied liability.

Claimant testified that he has not been treated for his neck since the 2014 surgery. On cross-examination, Claimant admitted that he was involved in a motor vehicle accident in September 2016, which caused neck, shoulder and arm pain. The medications Dr. Kabazie prescribed for his back pain have also relieved these pain symptoms. Claimant also admitted that he has had pseudo gout arthritis, which causes pain.

Claimant presented an April 30, 2018, report issued by Robert Bernstein, M.D., his primary care physician. Dr. Bernstein opined that Claimant's chronic back pain was the "direct result" of the 1988 work injury. C.R., Item 13, at 2. Specifically, Dr. Bernstein attributed Claimant's back pain to a myelogram performed in 1988 to assess his work injuries, which caused an inflammatory condition called chronic lumbar arachnoiditis. Dr. Bernstein opined that Claimant's chronic back pain is permanent and "can only be treated with supportive care. The prognosis remains poor as this is expected to continue throughout the course of [Claimant's] life." *Id.* at 1.

Claimant also presented Dr. Bernstein's medical notes of 2016 and 2017; an undated letter from Dr. Kabazie; and numerous medical bills and records relating to Claimant's pain treatment and prescription medicines between 2016 and 2018.

4

Employer submitted the medical records relating to Claimant's low back surgery of August 2014.

## WCJ Minnich's Decision

WCJ Minnich granted Claimant's penalty petition. In doing so, the WCJ credited Claimant's testimony, which he found consistent with the medical records reporting pain symptoms primarily related to Claimant's neck, shoulder and arm but also to his low back. The WCJ found that the medication and trigger point injections treated Claimant's back and leg, for which Employer accepted liability in 1988. The WCJ explained that Employer had the burden to show that the disputed treatment was not related to the accepted work injury, and it failed to do so. WCJ Minnich Decision at 6, Conclusion of Law No. 3 (citing *Kurtz v. Workers' Compensation Appeal Board (Waynesburg College)*, 794 A.2d 443 (Pa. Cmwlth. 2002)); C.R., Item 5, at 6.

WCJ Minnich found WCJ Ignasiak's statement in her 2016 decision that no further treatment would be needed for Claimant's 1988 low back work injury to be "mere dicta at best, with no legal import or binding effect." WCJ Minnich Decision at 6, Conclusion of Law No. 3; C.R., Item 5, at 6. The only issue before WCJ Ignasiak was whether Claimant's August 2014 low back fusion surgery was work-related, as set forth in the C&R Agreement. The parties did not have an opportunity to litigate the issue of "future medical treatment" of Claimant's 1988 work injury before WCJ Ignasiak. Nevertheless, WCJ Minnich found that Employer presented a reasonable contest "based upon a good faith interpretation of [WCJ] Ignasiak's [d]ecision." WCJ Minnich Decision at 7, Conclusion of Law No. 6; C.R., Item 5, at 7.

5

WCJ Minnich ordered Employer to pay the outstanding medical expenses at issue and assessed a 20% penalty against Employer on the medical bills, after repricing. Employer appealed to the Board and argued that Claimant's penalty petition was barred on the ground of collateral estoppel and that WCJ Minnich erred in granting the penalty petition. The Board affirmed.

**Appeal**

On appeal,[4] Employer raises three issues for our consideration.[5] First, Employer argues that WCJ Minnich was collaterally estopped from holding Employer liable for the medical treatment of Claimant's back and leg, after WCJ Ignasiak had previously determined that his work injury required no further treatment. Second, Employer argues that the Board erred in placing the burden on Employer to prove that the medical expenses at issue were not related to Claimant's work injury. Even so, the record demonstrated "a lack of connection between the treatment at issue [and] the 1988 work injury." Employer Brief at 16. Stated otherwise, the Board's finding that the medical expenses at issue treated Claimant's work injury was not supported by substantial evidence. Finally, Employer argues that the Board erred in imposing a 20% penalty. We address these issues *seriatim*.

---

[4] In reviewing an order of the Board, this Court must determine "whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated, or whether an error of law was committed." *City of Philadelphia v. Workers' Compensation Appeal Board (Brown)*, 830 A.2d 649, 653 n.2 (Pa. Cmwlth. 2003). "Substantial evidence" has been defined as such relevant evidence that a reasonable mind might accept as adequate to support a finding. *Mrs. Smith's Frozen Foods Co. v. Workmen's Compensation Appeal Board (Clouser)*, 539 A.2d 11, 14 (Pa. Cmwlth. 1988).

[5] On June 8, 2020, Employer requested a stay of the payment of Claimant's medical expenses, which this Court granted. It found that Employer met the standards set forth in *Pennsylvania Public Utility Commission v. Process Gas Consumers Group*, 467 A.2d 805 (Pa. 1983). Notably, should Employer prevail, there was a possibility of duplicate payment of the medical costs because the Supersedeas Fund cannot reimburse a health insurer.

## I. Collateral Estoppel

Employer argues that WCJ Ignasiak's 2016 decision that "[C]laimant had achieved his maximum degree of medical improvement" and that "no further treatment [is] necessary [or] can be expected in the future relative to the low back condition as a result of the March 21, 1988 work event" precluded WCJ Minnich's decision in the instant case. Employer Brief at 12-13 (citing WCJ Ignasiak Decision, F.F. No. 4; C.R., Item 25, at 5). In deciding Claimant's penalty petition, WCJ Ignasiak considered whether Claimant's 2014 medical treatment was causally related to his 1988 work injury. Because Claimant did not appeal WCJ Ignasiak's finding that Claimant needed no further medical treatment for his work injury, her decision is final and cannot be relitigated.

Claimant counters that WCJ Ignasiak's finding on future medical treatment was not essential to the judgment she rendered in her decision. Although WCJ Ignasiak denied Claimant's penalty petition and found Employer not liable for the August 2014 surgery, she did not find that Claimant fully recovered from the work injury.

Under the collateral estoppel doctrine, "a determination of fact in a prior action is deemed conclusive between parties in a subsequent action, provided that the fact was actually litigated in the prior action, was essential to the judgment, and was determined by valid and final judgment." *Reif v. Workers' Compensation Appeal Board (Funks Hauling Service)*, 700 A.2d 1362, 1364 (Pa. Cmwlth. 1997). "Where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel in the second action only to those matters in issue[.]" *Patel v. Workmen's Compensation Appeal Board*

7

*(Sauquoit Fibers Co.)*, 488 A.2d 1177, 1179 (Pa. Cmwlth. 1985) (quotations omitted).

In *Reif*, the employer filed a termination petition alleging that the claimant was fully recovered from his work-related "right and left calf, right hip, right shoulder and neck contusion." 700 A.2d at 1363. The claimant's medical witnesses opined that the work injury led to post-concussion syndrome and post-traumatic psychosis.[6] The referee denied the employer's termination petition, modified the claimant's benefits to partial disability, and ordered the employer to pay the medical bills including those for psychological counseling.

Nine years later, the claimant filed a penalty petition when the employer refused to pay certain medical bills. The employer filed a petition for review of medical treatment, alleging that the claimant sought payment for treatment of a psychiatric condition unrelated to his work-related injury. The WCJ dismissed the penalty petition on the ground that the psychiatric bills were not related to the work injury. The Board affirmed.

On further appeal, this Court reversed on grounds of collateral estoppel because the question of whether the claimant's psychic injury was causally related to his work injury had been litigated before the referee. Further, it "was essential to [the referee's] judgment, otherwise medical bills for psychological counseling and treatment would not have been paid and, in part, the existence of that condition caused [the employer's] termination petition to be denied." *Reif*, 700 A.2d at 1364. The referee's order was unappealed and final; as such, the same issue could not be relitigated before the WCJ. *Id*.

---

[6] WCJs were previously referred to as referees under the Act. *See* Section 401 of the Act, *amended by* the Act of July 2, 1993, P.L. 190, 77 P.S. §701 (the term referee shall mean a WCJ and any reference to a workmen's compensation referee shall be deemed to be a reference to a WCJ).

Here, the issue raised in Claimant's penalty petition before WCJ Ignasiak was whether Employer violated the Act by refusing to pay for Claimant's 2014 low back fusion surgery, an issue expressly preserved in the C&R Agreement. WCJ Ignasiak concluded that the surgery was not causally related to the work injury because, *inter alia*, Claimant had attained maximum medical improvement in May 2009. Implicit to this finding was that a non-work-related back problem necessitated the surgery. WCJ Ignasiak then found that "[t]here is no further treatment that is necessary or that can be expected in the future relative to the low back condition as a result of the March 21, 1988 work event." WCJ Ignasiak Decision, F.F. No. 4; C.R., Item 25, at 5.

However, maximum medical improvement "is not the same as full recovery." *Arvilla Oilfield Services, Inc. v. Workers' Compensation Appeal Board (Carlson)*, 91 A.3d 758, 765 (Pa. Cmwlth. 2014). Maximum medical improvement means that the claimant's condition has become "static or stable," but continued palliative care, such as treatment of pain, may be required. *Id.* (quoting *Combine v. Workers' Compensation Appeal Board (National Fuel Gas Distribution Corp.)*, 954 A.2d 776, 781 (Pa. Cmwlth. 2008)). Essential to WCJ Ignasiak's decision was her finding that Claimant's maximum medical improvement precluded surgical treatment. WCJ Ignasiak also found that Claimant's 1988 work injury would not need future treatment and this would include palliative treatment such as the prescription medications and trigger point injections that are at issue here.

Whatever necessitated Claimant's surgery in 2014, it was adjudicated not to be his 1988 work injury. However, WCJ Ignasiak did not identify that condition. Although close, we conclude that WCJ Ignasiak's finding that Claimant

9

did not need further medical treatment for his 1988 work injury was not essential to her judgment that Employer was not liable for the 2014 back surgery.

Accordingly, WCJ Ignasiak's decision did not collaterally estop WCJ Minnich from considering whether Claimant's 1988 work injury continued to require palliative treatment.

## II. Burden of Proof and Substantial Evidence

Employer argues, next, that the Board erred in requiring Employer to prove that the disputed medical expenses were not related to Claimant's work injury but, in any case, the record shows just that. Claimant had a "longstanding history of complaints of neck, shoulder and arm pain"; his back surgery performed in 2014 was found not to be related to his work injury but to one of his other problems; his subsequent employment after the work injury involved "long hours and walking long distances" that caused him back problems; and he suffered various non-work-related symptomatic conditions such as stenosis and arthritis. Employer Brief at 20. In light of the above evidence, Employer contends that WCJ Minnich abused his discretion in connecting the disputed treatments to the 1988 work injury.

Claimant counters that where, as here, benefits had not been terminated, it was not his burden to establish that each medical treatment related to his work injury. So long as Claimant continued to be treated for his work injury, it was Employer's burden to establish that treatments were not related to Claimant's work injury. Claimant Brief at 12 (citing *Kurtz*, 794 A.2d 443).

In *Kurtz*, 794 A.2d at 445, the claimant suffered a head injury, and the employer accepted liability for a concussion with "retrograde amnesia and severe paracervical spasms," for which the claimant underwent surgery. A year later, he again experienced pain in the area of his original injury, and he underwent treatment.

10

The claimant's workers' compensation insurance carrier refused payment on the ground it was not related to the work injury. The claimant then filed a petition to review medical bills and a reinstatement petition. The WCJ determined that the claimant did not prove that the treatments for his head pain were causally related to the original work injury. The Board affirmed.

On appeal, this Court determined that the Board erred. We reasoned that once liability was established for the claimant's head injury, any natural and probable symptoms of head pain were presumed to be related to the work injury. It was the employer's burden to establish otherwise. We stated as follows:

> If... a claimant receives medical treatment for new symptoms that allegedly arise from the compensated injury, and the employer refuses to pay the associated bills, the burden of establishing that the symptoms and treatments are related to the compensable injury turns on whether the connection is obvious.
>
> An "obvious" connection "involves a nexus that is so clear that an untrained lay person would not have a problem making the connection between" the new symptoms and the compensated injury; the new symptoms would be a "natural and probable" result of the injury…. If the new symptoms and the compensable injury are obviously related, and benefits have not been terminated, then the claimant will benefit from the presumption that the new symptoms are related to the compensable injury and, thus, his employment, and it will be the burden of the employer to prove that the new symptoms complained of are unrelated to the compensable injury.

*Kurtz*, 794 A.2d at 447-48 (citations omitted).

In the case *sub judice*, Employer accepted Claimant's work-related injury as "Leg/Back," C.R., Item 24, at 1, for which Claimant seeks treatment. There is an obvious connection between the "Leg/Back" injury and the back pain. Thus, Employer carries the burden to prove that the treatment was for an injury distinct

11

from the acknowledged injury. *Kurtz*, 794 A.2d at 448. Employer presented no such medical evidence to the WCJ.

Employer argues that the record shows that the above-listed non-work-related incidents and medical conditions contributed to Claimant's pain. The relevant inquiry in a substantial evidence analysis is not whether "there is evidence in the record which supports a factual finding contrary to that made by the WCJ" but, rather, "whether there is any evidence which supports the WCJ's factual finding." *Hoffmaster v. Workers' Compensation Appeal Board (Seno Products, Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998). The Court must view the evidence in a light most favorable to the party that prevailed before the factfinder.

WCJ Minnich credited Claimant's testimony and his evidence, including Dr. Bernstein's report, which attributed Claimant's chronic back pain to a myelogram done in 1988 to assess his work injuries. This resulted in a permanent inflammatory process called chronic lumbar arachnoiditis. Dr. Bernstein further opined that Claimant's chronic back pain "can only be treated with supportive care." C.R., Item 13, at 1. Dr. Bernstein's report is fully consistent with WCJ Ignasiak's finding that Claimant had attained maximum medical improvement from his work injury. WCJ Minnich gave more weight to this evidence than to the other evidence in the record that Claimant's need for pain control related to other incidents that took place after 1988. This is the prerogative of the factfinder. *Casne v. Workers' Compensation Appeal Board (Stat Couriers, Inc.)*, 962 A.2d 14, 17-19 (Pa. Cmwlth. 2008) ("A reviewing court does not reweigh evidence or review witness credibility"; it is the prerogative of the WCJ to determine the credibility of witnesses and the weight to be accorded evidence).

12

The Board did not err in holding that Employer was required to prove that Claimant's medical expenses at issue were not related to the work injury, and WCJ Minnich's finding that the treatment was related to Claimant's work injury was supported by substantial evidence.

### III. Penalty

Finally, Employer argues that the Board erred in imposing a 20% penalty on Employer. WCJ Minnich did not find that Employer's failure to pay benefits constituted "unreasonable or excessive delays" under Section 435(d)(i) of the Act. 77 P.S. §991(d)(i). To the contrary, the WCJ determined that Employer had a reasonable contest based on its "good faith interpretation of [WCJ] Ignasiak's Decision." WCJ Minnich Decision at 7, Conclusion of Law No. 6; C.R., Item 5, at 7. Claimant responds that Employer unilaterally stopped paying Claimant's medical bills in 2016 and that WCJ Minnich acted within his discretion in imposing a 20% penalty based upon Employer's 31-month delay in payment.

Section 435(d)(i) of the Act authorizes the imposition of a penalty of up to 50% of the compensation where the employer violates the Act or its regulations. It states:

> Employers and insurers may be penalized a sum not exceeding ten per centum of the amount awarded and interest accrued and payable: Provided, however, That such penalty may be increased to fifty per centum in cases of unreasonable or excessive delays. Such penalty shall be payable to the same persons to whom the compensation is payable.

77 P.S. §991(d)(i). In penalty petition proceedings, the claimant "bears the burden of proving a violation of the Act occurred." *Gumm v. Workers' Compensation Appeal Board (Steel)*, 942 A.2d 222, 232 (Pa. Cmwlth. 2008). The WCJ's decision on the assessment of penalties and the amount of the penalties imposed will not be

13

overturned on appeal absent an abuse of discretion. *Dworek v. Workmen's Compensation Appeal Board (Ragnar Benson, Inc.)*, 646 A.2d 713, 716 (Pa. Cmwlth. 1994).

We conclude that WCJ Minnich did not abuse his discretion. "Once the employer's liability for the work injury has been established, the employer may not unilaterally stop making benefit payment[s] in the absence of a final receipt, an agreement, a supersedeas or any other order of the WCJ authorizing such action." *McLaughlin v. Workers' Compensation Appeal Board (St. Francis Country House)*, 808 A.2d 285, 288 (Pa. Cmwlth. 2002). In *Listino v. Workmen's Compensation Appeal Board (INA Life Insurance Co.)*, 659 A.2d 45, 48 (Pa. Cmwlth. 1995), this Court held that "[w]hen an employer unilaterally ceases to pay a claimant's medical costs based on an alleged lack of causation, and a referee later determines those costs to be causally related to [the claimant's] work-related injury," the employer is retroactively liable for the medical costs and is subject to penalties "at the discretion of the referee." Further, in *North Pittsburgh Drywall Co., Inc. v. Workers' Compensation Appeal Board (Owen)*, 59 A.3d 30 (Pa. Cmwlth. 2013), this Court held that the WCJ's imposition of a 20% penalty after the employer delayed making benefit payments for 20 months was not an abuse of discretion.

In the case *sub judice*, Employer unilaterally stopped paying Claimant's medical bills in June of 2016. WCJ Ignasiak found that Claimant required no more medical treatment in the future, but did not terminate Claimant's medical benefits. She merely denied Claimant's penalty petition which alleged that Employer was liable for his 2014 back surgery. Employer "assume[d] the risk of exposure to possible penalty liability" by choosing to unilaterally stop paying Claimant's medical bills. *Listino*, 659 A.2d at 48.

14

For all these reasons, we conclude that the Board did not err in affirming WCJ Minnich's imposition of the 20% penalty on Employer.

## Conclusion

WCJ Ignasiak's finding on future medical treatment was not essential to her judgment that Employer was not liable for Claimant's fusion surgery and, thus, did not collaterally estop WCJ Minnich from holding Employer liable for Claimant's palliative care. WCJ Minnich did not err in requiring Employer to prove that Claimant's medical expenses at issue were not related to the work injury, and his finding that the medical bills at issue were related to Claimant's 1988 work injury was supported by substantial evidence. Finally, we conclude that WCJ Minnich acted within his discretion in imposing a 20% penalty based upon Employer's 31-month delay in payment of Claimant's medical benefits.

Accordingly, we affirm the Board's April 2, 2020, adjudication.

_____
MARY HANNAH LEAVITT, President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

DTE Energy Company, Inc.　　　　　:
and Old Republic Insurance　　　　　:
Company,　　　　　　　　　　　　　:
　　　　　　　　　Petitioners　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　v.　　　　　　　　　　　　　:　No. 418 C.D. 2020
　　　　　　　　　　　　　　　　　　:
Workers' Compensation Appeal　　　　:
Board (Weatherby),　　　　　　　　　:
　　　　　　　　　Respondent　　　　:

## ORDER

AND NOW, this 28th day of January, 2021, the adjudication of the Workers' Compensation Appeal Board in the above-captioned matter, dated April 2, 2020, is hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge