IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Luzerne County,                   :
            Petitioner          :
                                       :
            v.                     :   No. 1057 C.D. 2020
                                         :   Submitted: March 12, 2021
Louise Groner (Workers' Compensation : 
Appeal Board),                 :
            Respondent      :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, Judge[1]
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE ANNE E. COVEY, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE LEAVITT                             FILED:  April 11, 2022

Luzerne County (Employer) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) that granted the petition to review medical benefits filed by Louise Groner (Claimant) as well as her penalty petition. In doing so, the Board affirmed the remand decision of the Workers' Compensation Judge (WCJ) determining that Claimant did not have to present expert medical evidence in her challenge to Employer's unilateral decision to stop covering medications prescribed to treat her work injuries. Upon review, we affirm.

Claimant worked in housekeeping for Employer at a nursing home. In 1995, she sustained a work-related cervical/shoulder strain with a psychological component. The indemnity portion of her claim was resolved in a 2003 Compromise and Release Agreement (C&R Agreement), in which Employer acknowledged its

---

[1] This matter was assigned to the panel before January 3, 2022, when President Judge Emerita Leavitt became a senior judge on the Court.

continuing obligation to cover the medical expenses related to Claimant's work injury.

On February 24, 2017, Employer's third-party administrator, Excalibur Insurance Management Services, LLC (Insurance Administrator), sent a letter to Claimant stating, in pertinent part, as follows:

> In recent conversations with both [Michele Giorgio, Rehabilitation Case Manager,] and Tom Gaughan, Vice President of Claims, you have advised that you were taking only three (3) medications for the work injury.
>
> Based upon these conversations, *going forward*, effective March 1, 2017[,] *the only medications that will be approved and paid for include*:
>
> > Percocet Tab 10-325 mg. 30 days
> >
> > Oxycontin Tab 20 mg. CR 30 days
> >
> > Oxycontin Tab 40 mg. CR 30 days
> >
> > Lidocaine [Patch] 5% 30 days

Reproduced Record at 114a (R.R. __) (emphasis added). In response, Claimant filed a petition to review medical treatment, alleging that as of March 1, 2017, Employer stopped paying for reasonable and necessary medical expenses related to her work injury. She also filed a penalty petition alleging that Employer's refusal to pay her medical benefits violated the Workers' Compensation Act (Act).[2] The petitions were assigned to a WCJ.

At the hearing before the WCJ, Claimant testified that in 1995 she sustained a physical strain in the course of her employment with Employer that was followed by neck, back and shoulder surgery and led to her depression. Claimant explained that when she received Insurance Administrator's letter, she was taking

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

Percocet every four to six hours for pain. She took 40 milligrams of Oxycontin in the morning and 20 milligrams at night. Additionally, each day she applied two Lidocaine patches to her back. She had also been prescribed Calcium, Magnesium, and Vitamin D tablets, as well as Diclofenac Sodium topical solution, that were covered by Employer prior to March 1, 2017.

Claimant testified that prior to receiving the February 2017 letter, she spoke by phone with Tom Gaughan, who is Insurance Administrator's Vice President of Claims. Gaughan informed her that Employer would not pay for her pain medication because "it was too expensive." Notes of Testimony (N.T.), 8/8/2017, at 31; R.R. 31a. He also advised her that, going forward, only three of her medications – Percocet, OxyContin, and Lidocaine patches – would be covered by Employer. She has not been able to get any Lidocaine patches.

Claimant testified that she was currently treating with Joseph F. Radzwilka, D.O., for the physical problems related to her work injury and with Matthew A. Berger, M.D., for her psychological problems. She prepared a list of medications and provided it to Gaughan. As of March 1, 2017, Dr. Radzwilka prescribed Diclofenac Sodium topical solution 1.5%, Celebrex, Percocet, and Oxycontin. Claimant testified that Dr. Radzwilka also prescribed Calcium, Magnesium, and Vitamin D to help keep her bones from deteriorating, as well as Senna and Colace to help with the constipation caused by the pain medications. Dr. Berger prescribed Nuvigil and Xanax for anxiety and Prozac for depression. He also prescribed Amitriptyline for insomnia, caused by her pain and anxiety.

On cross-examination, Claimant acknowledged that in her telephone conversation with Gaughan, she stated that she was taking three medications for her work injury. Later that day, Claimant realized that she failed to tell him about her

3

other medications. She then contacted Gaughan by phone and faxed him a complete list of the medications prescribed to treat her work injury.

Gaughan testified that he examined Claimant's claim file when Insurance Administrator's pharmacy benefit manager raised an issue related to Claimant's medications. He studied Claimant's medications and the notes from her independent medical examination, which showed that she had been in a motor vehicle accident. In February of 2017, he contacted Claimant and reviewed each of the prescriptions with Claimant, asking her whether each was related to her work injury. Claimant commented, "I don't know why they bill you people those, you know, it's not related to that." N.T., 10/10/2017, at 17; R.R. 69a. Gaughan testified that Claimant stated that the only medications related to her work injury were Percocet, Oxycontin and Lidocaine patches, which Employer continues to cover.

On cross-examination, Gaughan acknowledged that Employer did not file a utilization review petition; rather, it just denied payment on the medications because they "[were not] related to the work injury." *Id*. at 40; R.R. 92a. Gaughan explained the decision was based partly on Claimant's statements and partly on the conclusion of Insurance Administrator's pharmacy benefit manager, Modern Medical Pharmacy.

In rebuttal, Claimant offered documentary evidence.

She presented a letter of November 15, 2017, from Dr. Berger. It stated that Claimant "is currently under [his] care for treatment of major depressive disorder. She was diagnosed with depression and started on depression medications in 1995 as a direct result of a work[-]related injury." R.R. 116a. The letter also stated that Claimant's psychiatric diagnoses were a direct result of chronic pain from

4

a work-related injury. Finally, the letter explained that Claimant's medications change from time to time, depending on the severity of her symptoms.

She offered a second letter, dated November 20, 2017, from Dr. Radzwilka. His letter stated that Claimant "is a patient of [his] who follows regularly in the office. She chronically take[s] pain medication and sleep medication for a work-related injury which causes neck and low back pain." R.R. 115a. Claimant also submitted a January 4, 2018, note from Dr. Radzwilka that explained Claimant's medical history and listed her current medications, which included: Percocet, Furosemide, Amitriptyline HCL, Naproxen Sodium, Cyclobenzaprine HCL, Celecoxib, Nature-Throid Tablet, Senna Capsule, Oxycontin (20 mg and 40 mg tablets), Calcium Tablet, Vitamin C, Vitamin D, Lidoderm External Patch, Percocet, and Colace. Certified Record, Item No. 55 at 5-6.

The WCJ credited Claimant's testimony but found that it was not competent to establish a causal relationship between her list of medications and her work-related injury; rather, she needed unequivocal medical testimony to prove causation. The WCJ observed that Dr. Berger has prescribed various medications for treatment of her major depressive and anxiety disorder caused by her work injury. However, Dr. Berger did not explain which of Claimant's medications specifically related to her work-related psychological problems. The WCJ found Dr. Radzwilka credible that the specific medications of Percocet and Oxycontin are causally related to Claimant's work injury. However, Claimant did not present evidence that Employer had refused to pay for these medications.

Claimant appealed, and the Board reversed the WCJ's decision. The Board concluded that because Claimant's work injury had been established, Employer was responsible for the payment of her work-related medical expenses.

5

Claimant did not have to prove causation. The Board also found that Claimant's testimony, which was credited, established the medical expenses that Employer had refused to pay, including Lidocaine patches. On the penalty petition, the Board explained that it was Employer's burden to show it did not violate the Act, and "[it] did not present any evidence, medical or otherwise, that the prescriptions were not causally related to the recognized work injuries." Board Adjudication, 8/13/2019, at 10. Indeed, Insurance Administrator's witness acknowledged that the decision to deny coverage on Claimant's prescriptions was not based upon a medical opinion but upon Claimant's statements, which she later attempted to correct. Because penalties may be assessed where the employer fails to pay compensation when due, the Board remanded the matter to the WCJ for assessment of penalties.

On remand, the WCJ granted Claimant's review and penalty petitions, directing Employer to pay Claimant's litigation costs of $278.65. The WCJ did not assess a monetary penalty because Claimant did not submit any evidence that she had incurred out-of-pocket expenses for her medications or that there were outstanding balances owed to medical providers. The Board affirmed the WCJ's remand decision.

Employer petitioned for this Court's review. On appeal,[3] Employer contends that the WCJ erred in granting Claimant's review and penalty petitions and raises three issues. First, it argues that the Board erred in granting Claimant's review petition because Employer proved that the subject medications do not treat Claimant's work injury. Second, it argues that the record established that Claimant

_____

[3] This Court reviews the Board's decision to determine whether the necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Murphy v. Workers' Compensation Appeal Board (Mercy Catholic Medical Center)*, 721 A.2d 1167, 1169 n.1 (Pa. Cmwlth. 1998).

6

received her prescriptions without interruption for Percocet, Oxycontin and Lidocaine patches. Third, it argues that the Board erred in granting the penalty petition because Claimant did not prove that Employer violated the Act.

We begin with a review of the applicable legal principles. Section 306(f.1)(1)(i) of the Act requires an employer to pay for reasonable medical expenses necessary to treat a work injury. 77 P.S. §531(1)(i) (employer required to pay for "reasonable surgical and medical services, services rendered by physicians or other health care providers . . . medicines and supplies, as and when needed"). An employer is responsible for medical payments until a WCJ terminates those benefits. *Listino v. Workmen's Compensation Appeal Board (INA Life Insurance Company)*, 659 A.2d 45, 47-48 (Pa. Cmwlth. 1995). Where the employer's liability is established for compensation benefits, its failure to provide those benefits violates the Act. *McNulty v. Workers' Compensation Appeal Board (McNulty Tool & Die)*, 804 A.2d 1260, 1264 (Pa. Cmwlth. 2002).

Further, once liability is established, the claimant is not required to establish that ongoing medical treatment is causally related to the work injury "because the injury for which the claimant is treating has already been established." *Kurtz v. Workers' Compensation Appeal Board (Waynesburg College)*, 794 A.2d 443, 447 (Pa. Cmwlth. 2002). Accordingly, it is the employer's burden to prove that a medical expense is unreasonable, unnecessary or is not related to the accepted work injury. *Id*.

In its first issue, Employer argues that it was responsible only for the Percocet, Oxycontin and Lidocaine patches and not for the other medications prescribed to Claimant. However, Employer did not prove that these other medications were unnecessary or not related to the accepted work injury.

7

Employer's liability is not disputed. It agreed to continue to be responsible for Claimant's medical expenses related to her work injuries. Claimant's credited testimony established that she had been prescribed the following medications for her work-related conditions: Diclofenac Sodium topical solution 1.5%; Percocet; Celebrex; Calcium; Magnesium; Senna; Colace; Oxycontin; Lidocaine patches; Vitamin D; Prozac; and Amitriptyline. WCJ Decision, 11/8/2019, at 4, Finding of Fact (F.F.) No. 3(e). Claimant's testimony was corroborated by letters from her treating physicians Drs. Radzwilka and Berger. Dr. Radzwilka wrote that Claimant "chronically take[s] pain medication and sleep medication for a work-related injury[,]" and he listed Claimant's medications, which were consistent with the medications she stated she takes for her work injury. *Id.* at 5, 6, F.F. Nos. 5, 6(d). Dr. Berger wrote that Claimant's psychiatric diagnoses are a direct result of chronic pain from a work-related injury. *Id.*, F.F. No. 8.

Employer's evidence consisted of Gaughan's telephone conversation with Claimant, during which she stated that her work-related prescriptions were Percocet, Oxycotin and Lidocaine patches. However, Claimant credibly testified that she contacted Gaughan after the telephone conversation when she realized she had omitted other medications; she faxed him a complete list of her work-related medications later that day. We agree with the Board that Claimant's misstatement to Gaughan did not prove that Claimant's other listed medications were not for her work-related injury.

In its second issue, Employer argues that the record established that Claimant received coverage for Percocet, Oxycontin and the Lidocaine patches, without interruption. However, the WCJ found otherwise.

8

In a workers' compensation proceeding, "[t]he WCJ is the ultimate factfinder and has the exclusive province over questions of credibility and evidentiary weight." *University of Pennsylvania v. Workers' Compensation Appeal Board (Hicks)*, 16 A.3d 1225, 1229 n.8 (Pa. Cmwlth. 2011). Accordingly, the WCJ is free to accept or reject, in whole or in part, the testimony of any witness, including medical witnesses. *Griffiths v. Workers' Compensation Appeal Board (Red Lobster)*, 760 A.2d 72, 76 (Pa. Cmwlth. 2000). Generally, a WCJ's credibility determinations are binding upon the appellate court. *Dorsey v. Workers' Compensation Appeal Board (Crossing Construction Company)*, 893 A.2d 191, 195 (Pa. Cmwlth. 2006) (citation omitted). Moreover, it is irrelevant that the record contains evidence that supports a finding contrary to that made by the WCJ; rather, the pertinent inquiry is whether evidence exists that supports the WCJ's findings. *Valenta v. Workers' Compensation Appeal Board (Abington Manor Nursing Home and Rehab and Liberty Insurance Company)*, 176 A.3d 374, 382 (Pa. Cmwlth. 2017). Further, the prevailing party is entitled to the benefit of all inferences drawn from the evidence.

Here, the WCJ accepted Claimant's testimony that she had been prescribed Lidocaine patches for her work injury and that they were not being paid for by Employer. Employer did not present evidence to rebut Claimant's testimony. To the contrary, Insurance Administrator's representative, Gaughan, acknowledged that he "might have gotten a phone call from [Claimant] . . . stating that something [was not] being paid." N.T., 10/10/2017, at 19; R.R. 71a. Further, Claimant testified that there were other prescriptions that Employer has not covered, including Calcium, Magnesium, Vitamin D, and Diclofenac Sodium. Because Claimant's unrebutted testimony was credited by the WCJ, Claimant established that Employer

9

has not paid for all of the medications prescribed for her work injury, including the Lidocaine patches.

Alternatively, Employer argues that the Board erred in making factual findings on the causal relationship between Claimant's work injury and the prescriptions at issue. Employer argues that the WCJ is the ultimate factfinder, and "the Board may not substitute its judgment on credibility of witnesses for that of the [WCJ]," as it did in reversing the WCJ's initial decision. *Fashion Prints v. Workmen's Compensation Appeal Board*, 425 A.2d 1221, 1222 (Pa. Cmwlth. 1981). Notably, in his initial decision, the WCJ found Claimant's testimony was credible. The Board reversed the initial decision for error of law because the WCJ had burdened Claimant with proving a causal relationship between her medications and work injury. The Board did not engage in fact-finding to reach this legal conclusion.

In its third issue, Employer argues that the WCJ erred in granting the penalty petition. It is a clear violation of the Act for an employer not to pay a claimant's medical expenses. *See generally Rief v. Workers' Compensation Appeal Board (Funks Hauling Service)*, 700 A.2d 1362, 1365 (Pa. Cmwlth. 1997). Here, Employer was responsible for Claimant's work-related medical expenses and unilaterally ceased paying for some of her necessary prescriptions. Because this is a violation of the Act, the WCJ did not err in granting Claimant's penalty petition.[4]

For the foregoing reasons, the Board's adjudication is affirmed.

_____
MARY HANNAH LEAVITT, President Judge Emerita

---

[4] Employer could have sought a utilization review if it believed Claimant's prescriptions exceeded what was reasonable and necessary to treat her work injury. *CVA, Inc. v. Workers' Compensation Appeal Board (Riley)*, 29 A.3d 1224, 1228-29 (Pa. Cmwlth. 2011).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Luzerne County, :
          Petitioner :
  :
       v. : No. 1057 C.D. 2020
  :
Louise Groner (Workers' Compensation :
Appeal Board), :
          Respondent :

# **O R D E R**

AND NOW, this 11th day of April, 2022, the adjudication of the Workers' Compensation Appeal Board dated October 6, 2020, in the above-captioned matter is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita